Moncurb, P.
This is an appeal from a decree of the Circuit court of Smyth county, and involves a question of priority between a foreign attachment creditor and an assignee in bankruptcy of a common debtor, in regard to certain real estate of the debtor lying in said county. The question depends upon the priority of time, when the respective liens or claims of the conflicting claimants attached to the subject. The attachment creditor claims a lien from the time of filing his bill, to wit: the 20th day of February 1867; the assignee in bankruptcy claims alien from the time of the filing of the petition in bankruptcy, to Wit: the 2d day of March 1868, or at least from the time of the adjudication of the bankruptcy, to wit: the 28th day of March 1868. If the claim of the former be well founded, it is of course paramount to that of the latter. Prior in tempore est prior in jure. The assignee' takes the estate of the bankrupt just as the bankrupt held it, subject to all liens and equities which were good against the bankrupt at the time he became such. James on Bankruptcy, and cases cited in notes, pp. 36, 37 and 44. He stands in the shoes of the bank *211 rupt in regard to such estate, except that conveyances thereof fraudulent and void as to creditors, are void also as to him. Id. 87. The bankrupt law avoids any attachment of the bankrupt’s property made on mesne process within four months next preceding the bankruptcy, but not any such attachment made more than four months before such bankruptcy.
There is no contest in this case as to the fact that the common debtor filed his petition in bankruptcy on the 2d day of March 1868, and was adjudged a bankrupt on the 28th day of March 1868. Nor does it appear that there is any contest as to the fact, that the debt claimed by the attaching creditor was due by the common debtor at the time of the institution .of the suit, and still remains unpaid. Nor as to the facts, that the debtor at that time was a non-resident of the State of Virginia, that he owned the real estate on which the attachment lien is claimed, that the said real estate is situated in the said county of Smyth, in this State, and that these facts were all averred in the bill, which was filed in this suit on the 20th day of February 1867. And all these facts are fully sustained by the pleadings and proofs in the cause. The foreign attachment creditor had, undoubtedly, a good cause for a foreign attachment in chancery at the time of the filing of this bill, and the controversy in this cause seems to be narrowed down to this : Whether he so prepai’ed his bill, and so proceeded upon it, as to make him a foreign attachment creditor, and to give him the benefit of a foreign attachment lien from the time of the filing of his bill ?
He had a good case for a foreign attachment suit in chancery. Has he sufficiently statedjt in his bill ? And has he done what was necessary to give effect to his attachment lien ? If he has not, he has certainly been very unfortunate.
He had a good case for a foreign attachment suit, because the debtor resided “without the jurisdiction of *212 this commonwealth,” and had “lands or tenements within the ” same. And that was the only ground which, he had for subjecting the said real estate to the payment of the debt. He had no lien upon the land before he brought his suit. The judgment which had been obtained in Alabama for the debt was no lien upon the real estate of the debtor in Virginia. He was as to that real estate a mere creditor at large ; and he could acquire no lien upon it in invitum, but by an attachment suit, or by obtaining a judgment in Virginia fpr the debt.
Can this suit be regarded as a foreign attachment suit ? Are the averments of the bill sufficient for that purpose ? Have the proceedings in the suit been such as to give effect to it as an attachment suit ? These are the questions we now have to solve. ’
The complainant in his bill, 1st, Sets out the claim against the debtor, Frank A. Sanders, showing that it amounts to $12,271.49, for which a decree had been rendered in the State of Alabama, of which decree a copy is filed with the bill; 2d, Charges, that the debtor has large and valuable real estate in Virginia, and within the jurisdiction of the court, to subject which to sale for the payment of the said debt is the declared object of the bill, and the said real estate is particularly described in the bill as to quantity, title, and otherwise; 3d, Charges, that the debtor is a non-resident of the State ; 4th, Makes the proper persons defendants to the bill 5th, Prays for a sale of the said real estate for the payment of the said debt; and 6th, Prays for general relief.
How this is certainly a sufficient bill to give effect to-the suit as a foreign attachment suit in chancery. For although the suit is not called an attachment suit, by name, in the bill, and although the bill does not, in terms, pray that the land may be attached for the payment of the claim; yet the bill contains all the necessary and proper allegations for such a suit, and prays for suit *213 able specific as well as for general relief; which is all sufficient in substance, notwithstanding the formal omissions aforesaid, to make the suit an attachment suit, and. give full effect to it as such; unless the complainant has omitted something in the proceedings in the suit which the statute requires to give it effect as an attachment suit; in other words, to give it effect as an attachment lien upon the land, against the claim of the assignee in bankruptcy arising subsequently thereto.
Has there been any such omission in the proceedings, then? is the question.
If there has been, it consists in the omission of such an affidavit as the statute requires to be made in such cases, or in the omission of an endorsement on the subpoena, describing the real estate intended to be attached.
As to the affidavit, the act of 1819, 1 R. C., p. 474, § 1, only required an affidavit that the debtor”was out of the country, or that, upon inquiry at his usual place of abode, he could not be found, so as to be served with process; upon which affidavit the court was authorized to make an order, and require security, if it should appear necessary, to restrain the defendants in this country from paying, conveying away, or secreting the debts by them owing to, or the effects in their hands of such absent debtor or defendant. An affidavit of the non-residence of the debtor was made in this case on the 6th day of May 1867, about ten months before his petition in bankruptcy was filed, on which affidavit an order of publication against him was made, This .affidavit would have been a full compliance with the requisition of that act. But the Code of 1849, chapter 151, made a material change of the attachment law; and section 11, which relates to attachments in equity, provides that “there may be an affidavit according to the nature of the case, conforming, as near as its nature will admit, to what is specified in previous sections.” Section 1 of the same chapter is the section here chiefly referred to, and *214 provides that “when any suit is instituted for any debt, 0JL’ ^01’ damages for breach of any contract, on affidavit stating the amount and justice of the claim, that there is present cause of action therefor; that the defendant, or 0Qe °f the defendants, is not a resident of this State, and that the affiant believes he has estate or debts due him within the county or corporation in which the suit is, or that he is sued with a defendant residing therein, the plaintiff may forthwith sue out of the clerk’s office an attachment against the estate of the non-resident defendant for the amount so stated.” An affidavit which corresponds substantially with that prescribed by section 1 seems to be such an one as is contemplated by section 11, and is more comprehensive than the affidavit required by the act of 1819, which was only as to the non-residence of the debtor, or that, upon enquiry at his usual place of abode, he could not be found, so as to be served with process. But in construing the attachment law of 1849, we must bear in mind one of the chief purposes which the legislature had in view, to wit: to provide a substitute for the right which previously existed, to hold a defendant to bail, and we must look at the whole act together. The plan of the legislature was to apply legal remedies to legal demands, and equitable remedies to equitable demands, so as to give a remedy by attachment in equity only in those cases where the demand was equitable, and where, if all the defendants resided in the State, the suit would have to be brought in equity. According to this plan; the attachment was a mere collateral proceeding, incident to the main action or suit, which was the same in form as if no attachment was incident to or connected with it. It did not appear from the pleadings in the action or suit that any of the defendants were non-resident, or whether they had any, and if any, what estate in the jurisdiction of the court. Those pleadings merely showed that the plaintiff had a good cause of action or suit, supposing all the defendants *215 to be residents of the State. Therefore, it was fit and proper, when a plaintiff wished to have the benefit of an attachment to .secure the amount of what he might recover in the action or suit, that he should be required, as a foundation of the attachment, to make such an affidavit as was required by the Code of 1849. The law had previously been different. The only remedy which then existed against a non-resident debtor owning estate in this commonwealth, was a foreign attachment in chancery, whether the debt was a legal or an equitable debt. Where the debt was a legal debt, it was necessary to aver in tbe bill that the debtor was a non-resident of the State, and owned estate within the same, otherwise the bill would have been demurrable. Where the debt was an equitable debt, no such averment in the bill was necessary. In 1852 the Code of 1849 was amended, so as to add these words at the commencement of section 11 of chapter 151 aforesaid, to wit: 44A claim to any debt, or to damages for breach of any contract, against a person who is not a resideut of this State, but who has estate or debts due him within the same, may, if such claim exceed $20, exclusive of interest, be maintained in any court of equity for a couuty or corporation in which there may be any such estate, or a defendant owing any debt to such non-resident.” The effect of this amendment was to give to a creditor, having a legal claim against a debtor residing out of the State, and owning estate or effects therein, the same right to bring a foreign attachment suit in equity as he would have had before the Code of 1849, the only difference being that since the amendment he has had an election to sue at law or in equity in such a case, whereas, before the Code of 1849, he could sue in equity only. But no change was made in section 11 as to the affidavit to be given in a foreign attachment suit in equity for a legal demaud. In such a suit, brought under that section, -amended as aforesaid, it is necessary to aver in the bill *216 that the debtor resides out of the State, and has estate or e^'e°ts therein, as it would have been necessary to ma,^:e suc^ an averment before the Code of 1849, otherwise the bill would be demurrable. The grounds for equitable relief in such a case are threefold. 1st, that a debt is due to the plaintiff; 2ndly, that the debtor is a non-resident of the State; and 3dly, that he has estate or effects within the State. These three grounds make up a good case in equity, and if proved, the plaintiff will be entitled to a decree on the hearing for the amount of the debt, and for the application of the said estate and effects, as far as may be necessary, to the payment thereof. To be sure, there can be no decree againstjan absent defendant without an answer, appearance or publication. And there can be no publication without an affidavit of non-residence. Such an affidavit is, therefore, necessary where there is no answer nor appearance of the non-resident debtor. But if the case be regularly matured for hearing, and be fully proved, the plaintiff" is entitled to a decree accordingly, except against parties or persons who may be injured by his non-compliance with some preliminary requisition of the statute. He is certainly entitled to such a decree against the debtor himself, and all who stand in his shoes.
But even if any other affidavit than that of non-residence of the debtor were necessary in this case, it is well settled that the affidavit, required by the statute to authorize a court to sue out an attachment against the estate or effects of an absent debtor, may be made, either before or after the bill is filed. O'Brien, &c. v. Stephens, 11 Gratt. 610. See also Moore v. Holt, 10 Id. 284. Indeed, it is expressly declared by the statute, in the very section which gives the remedy in this ease, to wit: section 11 aforesaid, that “ such affidavit may be, at the time of, or after, the institution of the suit.” The decree appealed from is interlocutory. "What is there to prevent the affidavit from being now made, if any other *217 affidavit be necessary than that which has already been made?
As to the omission of an endorsement on the subpoena, •describing the real estate intended to be attached. The 7th section of chapter 151, of the Code of 1860, p. 647, provides, that (e every such attachment, (except where it is sued out specially against specified property,) may be levied upon any estate, real and personal, of the defendant, or so much thereof as is sufficient to pay the amount for which it issues. It shall be sufficiently levied in every case by a service of a copy of such attachment, on such persons as may be designated by the plaintiff in writing, or be known to the officer to be in possession of effects of, or to be indebted to, the defendant; and as to real estate, by such estate being mentioned and described by endorsement on such attachment” And the 12th section, Id. p. 648, provides, that “ the plaintiff shall have a lien from the time of the levying of such attachment, or serving a copy thereof, as aforesaid, upon the personal property, choses in action, and other securities of the defendant against whom the claim is, in the hands of or due from any such garnishee on whom it is so served, and on any real estate mentioned in an endorsement on the attachment or subpoena, from the sueing out of the same”
These provisions were intended to apply, mainly if not entirely, to the ordinary case of an attachment which is ancillary to an action at law for a legal demand, or to a suit in equity for an equitable demand, in which nothing is said in the pleadings about any attachment of any property. In order to constitute an attachment lien upon any property there must be a claim in some form to subject the property to the payment of the debt demanded in the action or suit. If there be no such claim in the pleadings in the action or suit itself, then an attachment must be issued, which may be levied upon any estate, real or personal, of the defendant, or so much thereof as is sufficient to pay the amount for which it *218 issues; and the plaintiff shall 'have a lien from the time of the levying of such attachment as aforesaid. In the ease of a foreign attachment in equity, the endorsement describing any real estate intended to be attached, may be made either on an attachment, or on a subpoena issued in the ease. But where, as in this case, a suit in the nature of a foreign attachment in chancery is brought to enforce a legal demand, and the bill positively avers that the debtor is a non-resident of the State, and has real estate within it, and in the jurisdiction of the court, fully sets out the demand, particularly describes the estate sought to be subjected to the payment of the debt, and contains all other necessary and proper allegations, there is no necessity and no occasion for any endorsement on the subpoena, or any process of attachment in the case, to give to the plaintiff a lien upon the estate for the payment of the debt; but, upon sustaining the allegations of his bill by proof, and otherwise maturing his cause for final hearing, he will be entitled to a decree to subject the estate to the payment of the debt according to the prayer of the bill. Why should an endorsement on a subpoena, or on process of attachment, be necessary in such a case ? What better notice could it give than would be given by the bill itself ? Would not the bill give much fuller and more specific notice generally than would be given by such an endorsement ? The bill is what would naturally be looked to by inquirers for information as to the object of the suit, rather than the process or any endorsement upon it. Suppose the land were vacant, and there were no home defendants to be served with process: there would seem to be no occasion for any process in such a case, except an order of publication against the non-resident debtor and owner of the land. Suppose an attachment, or a subpoena, were issued in such a case, and such an endorsement as is mentioned in the statute were made thereon, what good purpose could possibly be answered thereby,which would not be *219 better answered by tbe bill ? The process and endorsement would be shown to nobody, but be returned and filed among the papers of the suit. If, however, an endorsement were necessary in such a case, is not the order of publication equivalent to such an endorsement ? The order of publication, generally, gives as full information of the object of the suit as an endorsement on the process would, and is in itself in the nature of process.
Where the non-resident debtor is the only defendant in the case, the order of publication would seem to be the only necessary process. Suppose the non-resident defendant and the home defendants had all filed their answers in this ease, on condition that the attachment should not thereby be discharged, and had admitted the truth of all the allegations of the bill, would any endorsement then have been necessary ? Would not the plaintiff have been entitled to a decree according to the prayer of his bill? Suppose, instead of filing their answers and admitting the allegations of the bill, the defendants had suffered the bill to be taken for confessed, as was the case here, would any endorsement then have been necessary, and would not the plaintiff have been entitled to such a decree ? I suppose there can be no doubt but that he would have been so entitled in either of the cases above supposed, if no other persons were interested in the subject than the original parties to the suit. But suppose that, after the answers admitting the allegations of the bill are filed, or after it is taken for confessed, the non-resident debtor becomes a bankrupt before any decree is made for the sale of the land charged by the bill with liability for the debt, will the assignee in bankruptcy stand on any higher ground than the debtor himself? Will he not stand in the shoes of the bankrupt in regard to the suit ? And will not the plaintiff be entitled to precisely the same decree against him that he would have been entitled to against the debtor himself, if he had not become a bankrupt? Upon these questions *220 there can, I presume, be no doubt or difficulty. "When the bill was filed there was a Us pendeus to subject the real estate to the payment of the debt, as claimed in the bill. All rights acquired from or under the defendant, t° the subject in controversy, pending the suit, are subject to any decree which may be made in the suit, except so far as a purchaser without actual notice is protected by the Code, chapter 186, section 5. In all other respects the maxim, Pendiente lite nihil innovetur, applies.
In this case, the plain tiff, in his bill, fully and plainly stated a case which, if true, entitled him to a decree for the sale of the land in question for the payment of the debt due to him by his non-resident debtor. This bill was filed on the 20th day of February 1867, before the bankrupt law was passed, and more than a year before the non-resident debtor filed his petition in bankruptcy. There was an order of publication entered in the cáse on the 6th day of May 1867, against the non-resident dedefendants, including the debtor, Frank A. Sanders, upon an affidavit made in due form, which order was duly posted and published, the publication ending on the '81st day of May 1867, nearly ten months before the petition in bankruptcy was filed. The said order stated, that “the object of this suit is, to subject the interest of Frank A. Sanders in the land now in the possession of James B. Sanders and John L. Sanders, known as the River tract of their father’s estate, and seventy-four acres of the Sulphur Spring’s tract, to satisfy a debt of $12,271.49, ascertained by decree of the District court of chancery for the northern district of Alabama, and filed in the cause aforesaid in said Circuit court of Smyth county. ” The bill was even more full and specific, indeed much more so, than the said order, in the■ description of the land and the debt. The subpoena was returned executed on John L. Sanders, the only defendant who resided in the State, and who was charged in the bill to be in possession of the land, on the 22d day of February *221 1867, just two days after the filing of the bill. 17o answer was filed by any of the original defendants.
Such was and continued to be the state of the case until and on the 2d day of March 1868, when the nonresident debtor, Frank A. Sanders, filed his petition in bankruptcy; and until and on the 28th day of March 1868, when he was adjudicated a bankrupt; and until and on the 3d day of June 1868, when all the estate of the bankrupt was conveyed to the appellant, William Y. Oirode, as assignee in bankruptcy. On the 26th day of August 1868, the cause came on to be heard, upon the bill taken for confessed as to all the defendants, and upon the exhibits, when the court, considering that the interest of the said Frank A. Sanders in the real estate in the bill mentioned, was liable and ought to be subjected to sale for the satisfaction of the debt due to the plaintiff and in the bill mentioned, therefore decreed that John P. Sheffey, who was appointed a commissioner for the purpose, should sell the said real estate, or so much as might be necessary, in the manner and on the terms in said decree mentioned, and report his proceedings to the court. Before any sale was made under the said decree, it seems that the said assignee in bankruptcy asserted a claim to the said real estate, and on the 18th day of November 1868, an agreement in writing was entered into between the said assignee and the plaintiff in the suit, whereby it was agreed, that the said sale should not he further delayed or suspended, but should be made by the commissioner appointed by the said decree; that the proceeds thereof should be paid into court, to await the determination and final decree of the said court; that the said assignee should become, by virtue of the filing of the said agreement, a party to the said suit, without process; and that, upon the final hearing, the question of the validity of the lien claimed by said plaintiff by attachment, as against the claims of said assignee on behalf of the general creditors of said bankrupt, within. *222 the provisions of the bankrupt act, should be argued be-f°re> an<^ decided by said Smyth Circuit court, &c. This agreement was filed as an exhibit in the case on the 10th of December 1868, after which, the commissioner, J. Sheffey, sold the real estate aforesaid, and reported his proceedings to the court, and on the 31st day of March 1869, his report was confirmed. Shortly after this, the said assignee filed his answer in the case, denying all knowledge of the facts alleged in the bill, and requiring strict proof of them; claiming the proceeds of the sale of said land, by virtue of the proceedings in bankruptcy aforesaid; and insisting that the plaintiff' acquired no lien on the said land before the said-petition in bankruptcy was filed, or even before the conveyance of the bankrupt’s estate to the assignee,- on the 3d day of June 1868, as aforesaid. A copy of the conveyance, which'was recorded in the clerk’s office of Smyth County court, was filed as an exhibit with the answer. To the said answer the plaintiff replied generally. And the plaintiff also, it seems, filed as an exhibit in the cause, a copy of the record of the suit in Alabama, in which a decree was rendered on the 4th day of December-1866, for the amount of the debt claimed by him, from which copy it appears that the execution issued upon said decree was returned “no property found, June 1, 1867.”
On the 19th day of November 1869, the cause came on to be heard on the papers formerly read, the ariswer of the said assignee in bankruptcy, and replication thereto, and exhibits filed, and the written agreement aforesaid; on consideration whereof, the court was of opinion, that the plaintiff was entitled, as against the said assignee, to the proceeds of the sale of the land of the said Frank A. Sanders, sold by commissioner Sheffey as aforesaid, and decreed accordingly. From that decree the said assignee applied for and obtained the appeal we are now considering.
I am of opinion, that from the time of the institution *223 of this suit, or at least from the time of the filing of the bill, the plaintiff bad a lien upon the real estate of his debtor, Frank A. Sanders, therein mentioned, for the payment of the debt therein claimed; that the said debtor having become a bankrupt long after the institution, and during the pendency of the said suit, his assignee in bankruptcy can stand on no higher ground in regard to the said suit and the claim asserted therein than the bankrupt himself, but stands in his shoes, and is entitled only to his rights; and that there is no error in the decree appealed from, either as to the said bankrupt himself, or as to his said assignee.
I am therefore of opinion that the said decree ought to be'affirmed.
The other judges concurred in the opinion of Mon-cure, P.
Decree arrirmed.