## Richmond.

### BATCHELDER AND ALS. v. WHITE.

#### JANUARY 15th, 1885.

1. PRACTICE IN CHANCERY—*Multifariousness.*—Bill in equity against a number of distinct alienees of separate parcels of land, to set aside the several alienations as fraudulent and void, is not multifarious, though there be no charge of confederacy. The several defendants have one common interest centering in the point in issue, which is the alleged fraud in the disposition of the debtor's property. *Almond* v. *Wilson,* 75 Va. 643. *Hill* v. *Hill,* 79 Va. 592.

2. IDEM—*Foreign attachment—Bill demurrable—When.*—Neither under section 2, chapter 175, nor under section 11, chapter 148, Code 1873, can "a suit, in the nature of a foreign attachment," be maintained unless the claim asserted be actually due. Unless the bill avers that a debt is due the plaintiff from one who is non-resident of this State, and who has estate and effects in this State, it is demurrable. *Cirode* v. *Buchanan,* 22 Gratt. 216

3. ALTERATION OF INSTRUMENT—*Case at bar.*—A material alteration of a bond or note after its execution, when intentionally made by one having an interest in it, and without the consent of the party bound by it, invalidates the instrument as to such party. *Dobyns* v. *Rawley,* 76 Va. 544.

    Q. borrowed of W. $1,000, upon his note endorsed by S. Afterwards, without the consent or knowledge of S., but with the knowledge and consent of W., the note was altered by Q., and raised to $1,500, as security for an additional $500, which thereupon W. lent Q.

HELD:
    The alteration invalidated the note entirely as to S.

4. FRAUDULENT CONVEYANCES—*Innocent purchaser.*—It is not enough that the purpose of the grantor be fraudulent. Knowledge of such purpose. must be clearly brought home to the alienee. Where the latter has denied such knowledge on oath, it cannot be held that his denial is overthrown by mere circumstances of suspicion adduced against him.

Appeal from decree of corporation court of Norfolk city, entered 21st October, 1882, in a certain suit in equity wherein Elizabeth White was plaintiff, and the appellants, B. F. Batchelder and J. R. Spruill, E. M. Quimby, and two others, were defendants.

Opinion states the case.

*Edgar Allan* and *Ed. Spalding*, for the appellants.

*Burroughs & Bro.* and *Godwin & Martin*, for the appellees.

HINTON, J., delivered the opinion of the court.

This suit was instituted by the plaintiff, Elizabeth White, to recover the sum of $3,000, claimed to have been loaned by her to E. M. Quimby, one of the defendants, and to have three certain deeds of conveyance made by said Quimby to different parties, each conveying different property, and executed at different times, set aside and declared void as to the creditors of said Quimby, and the property thereby conveyed subjected to the payment of said Quimby's debts; and also to recover from J. R. Spruill, as endorser of a note for $1,000, made by said Quimby to the plaintiff, that amount on account of said endorsement, it being parcel of the sum above mentioned.

It appears by the record that Quimby executed a note for $1,000, which was dated May 9th, 1880, endorsed by the said Spruill, made payable to the order of the plaintiff, and delivered by Quimby to the plaintiff, on which, at the time of the delivery, she loaned Quimby $1,000. Afterwards, and while this note was in the plaintiff's ownership and possession, Quimby, with the knowledge and consent of the plaintiff, but without the knowledge of Spruill, so changed the note as to make it express on its face that it was for the sum of $1,500; and, upon the strength of this alteration, Quimby received from the plaintiff the further sum of $500.

Subsequently, another note for the sum of $1,500, dated August 9th, 1880, was executed and delivered by Quimby to the plaintiff. Each of these notes was payable, by its terms, one year after date.

The first of these notes was destroyed or carried away by Quimby, who left the State on the 26th August, 1880; and a few days thereafter, and before the notes were due, this suit was instituted, and an attachment was sued out and levied on certain property conveyed by the deed from Quimby to B. F. Batchelder, one of the appellants. There was a demurrer to the bill; answers by all of the defendants denying the charge of fraud; and a motion to dismiss the attachment.

The court, however, overruled the demurrer, refused to dissolve the attachment, dismissed the bill as to all of the defendants except as to B. F. Batchelder and Spruill, and decreed that the conveyance from Quimby to B. F. Batchelder was fraudulent and void, and that the property thereby conveyed was liable for Quimby's debts, and that Spruill was liable to the extent of $1,000, the amount of the note endorsed by him.

The bill was not multifarious; for, as was said by this court in *Almond* v. *Wilson*, 75 Va. 623, it is common practice for a judgment creditor to unite in one bill any number of purchasers claiming different parcels of land by separate and distinct alienations. When the bill is against fraudulent alienees, the matter in litigation is the fraud charged in the management and disposition of the debtor's property, in which charge all of the defendants are interested, though in different degrees and proportions. In such a case, and the case at bar is of that character, the uniting of the alienees in the same suit imposes no hardship on them worthy of consideration in comparison with that which will be imposed upon the creditors if a different rule is adopted, and they are forced to pursue in a separate suit each person to whom the debtor may have conveyed any portion of his property in pursuance of his purpose to defraud his creditors. As to the alienees then, we think that, as

a general rule, where they are charged with being parties to a fraudulent transaction, they can have no just cause of complaint if they are united in one suit. And when, as in the case before us, a surety is also made a defendant, we think that he also is without cause of complaint, because he is interested in having all of the property which has been fraudulently alienated recovered and applied in exoneration of any liability he may have incurred by reason of his suretyship. *Hill* v. *Hill*, 79 Va. 592; Bump on Fraudulent Conveyances (3d ed.), page 551. The bill was not demurrable, therefore, on this ground.

But, as we have stated, the notes, in one of which an alteration had been made, were not due at the time of the institution of the suit. The question, therefore, arises whether such a claim constitutes a proper foundation for a suit. The suit here was doubtless designed to be what Moncure P., in *Cirode* v. *Buchanan*, 22 Gratt. 218, styled the suit in that case, a suit in the nature of a foreign attachment. And it is insisted that such a suit, upon such a claim, may be maintained—first, under section 2 of chapter 175 of the Code of 1873; and second, under section 11 of the attachment laws (section 11, chapter 148, Virginia Code, 1873). The statute first invoked by the appellee provides that " a creditor, before obtaining a judgment or decree for his claim, may institute any suit to avoid a gift, conveyance, transfer, or any charge upon the estate of his debtor which he might institute after obtaining such judgment or decree, and that he may, in such suit, have all the relief in respect to such estate which he would be entitled to after obtaining a judgment or decree for the claim which he may be entitled to recover." This statute came under review in *Wallace* v. *Treakle*, 27 Gratt. 487. But there is nothing in the opinion of the court in that case, or in the terms of the statute, which gives the slightest countenance to the position assumed by the appellee. Equally little weight is to be attached to the suggestion that the suit may be maintained under section 11 of chapter 148 of the Code. In *O'Brien* v. *Stephens*,

11 Gratt. 611, Samuels J., in commenting upon the amendment which was engrafted upon this section, as it stood in the Code of 1849, by the act of April 3d, 1852, Session Acts 1852, chapter 95, section 1, said: "The statute of 1852, * * taken in connection with the statute, Code 1849, chapter 151, section 1, gives a creditor the right, upon making an affidavit stating the amount and justice of the claim, that there is a present cause of action therefor, that the defendant, or one of the defendants, is not a resident of this state, and that the affiant believes he has estate or debts due him within the county or corporation in which the suit is, or that he is sued with a defendant residing therein, to sue out of the clerk's office an attachment against the estate of the non-resident for the amount so stated." Thus clearly evidencing that, in the opinion of the judge (although the opinion so expressed was *obiter*), the claim against the non-resident must be due, or that no suit could be brought thereon. In this opinion we concur. Daniel on Attach., sections 37, 38; 1 Bart. Chy. Pr., 574–582. *Cirode* v. *Buchanan,* 22 Gratt. 211. It being then a prerequisite to the maintenance of the suit that the claim asserted shall be due, and it being patent on the face of the bill that the debt here sought to be enforced was *not* due, the bill was clearly demurrable, and should have been dismissed. It is not necessary, however, to rest the case, so far as the appellants, Spruill and Batchelder, are concerned, entirely upon the foregoing ground. For Spruill was discharged from all liability for the note for $1,000, the only one upon which he was endorser, by reason of the alteration made in the body thereof, as the authorities are abundant to establish.

In *Newell* v. *Mayberry*, 3 Leigh, 254, Tucker, P., speaking for the court, said: "If it had appeared that the alteration was made by Mayberry, or any other, by his procurement, then he could never recover upon this contract, nor could he be permitted to establish it by any other evidence, or to avail himself of the contract, according to its original or true character."

In another case, Burks, J., delivering the opinion of the court, said: "A material alteration of a bond or note after its execution, when intentionally made by one having an interest in it, and without the consent of the party bound by it, invalidates the instrument as to such party." This is the general rule to be deduced from the authorities at this day, and the chief reason of the rule is said to be that the "alteration destroys the identity of the contract; and therefore, if a party to the contract who has not consented to the alteration were to be held bound by it, it would be, in effect, imposing upon him, against his will, a new contract, to whose terms he never agreed. Note to *Woodworth* v. *Bank of America*, 10 Amer. Decisions, 267, and cases there cited." *Neff* v. *Homer*, 63 Penn. St. 330; *Chadwick* v. *Eastman*, 53 Me. 12; *Wood* v. *Steele*, 6 Wall. 80, and *Angle* v. *N. W. Mut. Ins. Co.*, 2 Otto, 342, where Mr. Justice Clifford says: "Authorities to show that a material alteration of a written instrument renders it void are unnecessary, as it is a principle of universal application." And the doctrine applies *a fortiori* in favor of a surety. 2 Pars. on B. & N. 561–562. Here the alteration was material, for it increased the debt by one-half of the original amount. It was made, if not by the procurement of the plaintiff, at least in her presence and with her permission. And she has actually sought to enforce the collection, not simply of the amount of her original demand, but of the amount by which the note was increased as well. She must suffer the consequences of her own folly and misplaced confidence, for the rule is not only wise but eminently just which requires that, if one of two innocent persons must suffer by the misconduct of a third person, that party shall suffer who, by his own act and conduct, has enabled such third person, by giving him credit, to practice a fraud or imposition upon the other party. Story on Agency, sections 56, 264; *Goodman* v. *Eastman*, 4 N. H. 461; *Wood* v. *Steele*, 6 Wall. 82; *Miller* v. *Gibson*, 19 Penn. St. R. 123.

Now, as to the defendant, B. F. Batchelder. It must be con-

ceded—for looking at the facts of this case in the light of subsequent events no other conclusion can be reached—that Quimby disposed of all of his property in pursuance of an actual intent to defraud his creditors.   But it by no means follows that Batchelder was cognizant of this purpose.   He has filed an answer, strictly responsive to the bill, in which he denies, in the most positive and emphatic manner, all knowledge of or participation in such fraudulent purpose, and this answer must be taken as true, unless overthrown by the satisfactory testimony of at least two opposing witnesses, or of one such witness with clear, corroborating circumstances.   1 Daniel Chy. Prac. 843; *Fant* v. *Miller & Mayhew*, 17 Gratt. 187; *Shurtz* v. *Johnson*, 28 Gratt. 664.   Now, taking the responsive statements of the answer as true, it is impossible that we should hold that they are overthrown by the mere circumstances of suspicion adduced against them.   Batchelder, we must remember, had not the advantages now possessed by the court for reading the purpose and intent of Quimby in disposing of his property.   He held out to Batchelder, as he did to others, an intention to change his business as the reason for his selling out, and Batchelder, who could see that he was disposing of his goods, may well have been deluded into the belief that his transactions were fair.   Under the pleadings and proofs in the cause, there is no case made against Batchelder.

We are of opinion to reverse the decree of the corporation court of Norfolk, abate the attachment, and to dismiss the bill, without prejudice to any right which the appellees may have to hereafter sue Quimby or his personal representatives.

DECREE REVERSED.