# CHARLESTON.

## TAYLOR's Ex'RS *v.* Cox.

Submitted January 14, 1889.—Decided February 11, 1889.

PRINCIPAL AND SURETY—ATTACHMENT—APPEAL—CONTINUANCE.

J. O. C., W. C., and T. executed a note to one Susan Spiller, in which J. O. C. was principal, and the others were sureties. Suit was brought on said note, and satisfaction was obtained out of the property of T. in the county of Tazewell. During the pendency of proceedings to enforce the collection of said note, T. died, and W. C. and A. G. C. transferred to the executors of T. two several notes made by M. to W. C., for $3,100.00 each, which purported to be secured by vendor's lien on certain lands, which had been conveyed to M. by said W. C. and A. G. C., to indemnify the estate of T. for the amount recovered from it by said Susan Spiller. Suit was brought by the executors of T. to enforce said vendor's lien, but it proved unavailing, for the reason that the proceeds of the land, when sold, were absorbed almost entirely by prior liens thereon, which existed against W. C. and A. G. C. Said executors obtained judgment on one of said notes in Washington county, where M. resided, and sought to prove said judgment, which was in the name of W. and A. G. C., for the use of said executors in a chancery suit pending in said county, but it was rejected both by the commissioner and the court. Said executors and the devisees of T. then brought a suit in equity in the Circuit Court of McDowell county in this state in the nature of a foreign attachment, to subject the lands of J. O. C. therein situated to the payment of the amount, which the estate of T. had paid for him as surety, and also the amount, which had been recovered from T. in his lifetime. An attachment was sued out and levied on said lands, and an order of publication taken and executed against the defendants. W. C.,

one of the defendants, appeared and required security for costs, which was given, made a motion to quash the attachment, which was sustained, demurred to the bill and filed his answer in October, 1877 ; and at the October term, 1884, of said Circuit Court, a decree was rendered against the defendants for the amounts claimed in the bill ; and the lands of J. O. C., which had been levied on under an attachment, were directed to be sold under the attachment-lien. Afterwards the defendant J. O. C. appeared, petitioned for a rehearing, and said decree was set aside, and he filed his answer. The court sustained the demurrer ; allowed the plaintiffs to amend at bar, gave a personal decree against the defendant J. O. C., and held that the plaintiffs had a lien by virtue of said attachment, and directed a sale of said lands to satisfy the plaintiffs' claim.   HELD :

I. The notes transferred to the executors of T. by W. C. and A. G. C. having proved worthless by reason of a failure of consideration, the question of diligence on the part of said executors is not material in this case.   (p. 183.)

II. Although an attachment sued out in this case appears to have been quashed, yet, the decree of the court below reciting, that the cause was heard upon the attachment duly levied upon the lands of J. O. C., in this Court said attachment must be taken to have been in full force and effect, duly sued out and levied as required by statute.   (p. 164.)

III. Under the circumstances of this case it was not incumbent on the executors of T. to appeal from the decision of the Circuit Court of Washington county rejecting the judgment in their favor against M. before resorting to the property of J. O. C. for reimbursement.   (p. 158.)

IV. The demurrer to the bill having been sustained, and the plaintiffs having amended at bar, and the defendants neither asking delay nor demurring to the bill as amended, there was no good reason for delaying the hearing of the case.   (p. 158.)

*A. W. Reynolds, J. H. Fulton* and *J. W. Caldwell* for appellants.

*D. E. Johnston* and *Chapman & Gillespie* for appellees.

ENGLISH, JUDGE :

This is an appeal from the Circuit Court of McDowell county, which, the appellants claim, involves a question of proper diligence on the part of the plaintiffs below and appellees in the collection of certain notes, which were placed in the hands of J. T. Frazier, one of the executors of J. W. Taylor, deceased, as collateral security for the payment of a

judgment obtained by Susan Spiller against William Cox and J. W. Taylor for the sum of $2,613.00 with legal interest thereon from the 2d day of August, 1858, and costs $11.93, credited by $600.00 paid May 1, 1859, and by $48.02 paid November 25, 1861, which judgment was obtained in the County Court of Wythe county on the 16th day of August, 1867, and also to secure a judgment for the same amount rendered by said court in favor of Susan Spiller against James O. Cox on the 16th day of November, 1867, said parties having been sued jointly, but process having been served on them at different times.

The collaterals above mentioned consisted of two notes executed by one T. G. McConnell to Aug. G. Cox and William Cox, each for the sum of $3,100.00 dated the 12th day of January, 1872, and payable with interest from October 1, 1871, and falling due respectively on the 1st days of October, 1873 and 1874. It appears that a writ of *fieri facias* issued from the office of the clerk of the County Court of Wythe county on said judgment, directed to the sheriff of Tazewell county, Va., and that by virtue of said writ the sheriff of Tazewell county sold personal property of John W. Taylor sufficient to realize the sum of $262.50, which was entered as a credit on said writ as of the 12th day of April, 1870; and on the 5th day of May, 1870, the said Susan Spiller instituted a chancery suit in the County Court of Tazewell county against A. G. Cox, William Cox and John W. Taylor, to subject the real estate of John W. Taylor, located in that county, to the payment of said judgment obtained by her against them in the County Court of Wythe county, and such proceedings were had therein, that a decree for the sale of the lands of said John W. Taylor was obtained to satisfy said judgment.

Subsequent however to the rendition of said decree and during the pendency of said suit the said John W. Taylor died, and the suit was revived against his executors and heirs at law, and on the 1st day of April, 1873, the lands of the estate of John W. Taylor, deceased, were sold to pay off said judgment of Susan Spiller obtained in the county of Wythe against said James O. Cox, William Cox, and John W. Taylor.

On the 5th day of February, 1873, William Cox and A. G. Cox assigned and transferred to J. T. Frazier, one of the executors of said John W. Taylor, the collaterals above mentioned with authority to him to use them, so far as they would pay the said two judgments of Mrs. Spiller rendered as aforesaid against James O. Cox, A. G. Cox, William Cox, and John W. Taylor.

In order to recover from said James O. Cox and William Cox the amount, which the estate of John W. Taylor was compelled to pay as surety for said James O. Cox, the executor and heirs ·at law of John W. Taylor, deceased, instituted this suit in the County Court of McDowell county, W. Va.. to subject two tracts of land alleged to be the property of said James O. Cox—one containing 9,988 acres, and the other 1,730 acres—situated in said county of McDowell, to sale for the payment of said amount and also the amount realized from the personal property of said John W. Taylor under said writ of *fieri facias.*

The defendants, William Cox and James O. Cox, both answered the plaintiffs' bill, and both claim, that the plaintiffs have no right to subject the lands of James O. Cox to sale to satisfy the claim asserted in the plaintiffs' bill, because, they say, after the death of said John W. Taylor but before the sale of the lands descended from or devised by him to plaintiffs, A. G. Cox and William Cox, transferred to J. T. Frazier, who was one of the executors of said John W. Taylor, and who qualified as such, two several notes above mentioned as collaterals, which notes were the second and third notes executed by said McConnell for the purchase-money of a tract of land situated in Wythe county, Va., on the waters of Cripple creek, which notes were so assigned as collateral security to indemnify the estate of said John W. Taylor for a certain amount of money, which the estate of said John W. Taylor was liable for as security for said J. O. Cox; and the defendant, J. O. Cox, claims, that, if due and· proper diligence had been used in the collection of said collaterals, more than enough could have been realized to reimburse the said estate of John W. Taylor for the amount afterwards paid in discharge of the liability of said John W. Taylor as surety for said J. O. Cox.

The evidence in this cause in my opinion does not disclose the fact, that any want of diligence on the part of the personal representatives of said John W. Taylor prevented them from realizing the amount of money mentioned in the aforesaid notes. If it is true, that judgments might have been obtained on these notes at an earlier day than they were obtained, yet the failure to collect these notes or either of them and to make them available for the purposes, for which they were intended, to wit, the reimbursement of the estate of John W. Taylor, deceased, to the extent of the amount paid by said decedent's estate to Susan Spiller, was not caused by delay in bringing said suits upon said notes. When judgments were obtained on said notes, T. G. McConnell owned a large amount of real estate in the counties of Tazewell, Wythe and Washington in the state of Virginia, against which said judgment-liens could have been enforced, and which were ample to pay off and satisfy said judgments and all prior existing liens upon them, if said judgments were valid and binding.

Judgment on the note for $3,100.00, which fell due on the 1st day of October, 1873, was obtained in the Circuit Court of Washington county, Va., where the defendant T. G. McConnell resided, at the May term, 1874. Execution was issued upon the judgment and returned "No property found," by the sheriff of Washington county. In December, 1874, a chancery suit was brought in the Circuit Court of Wythe county against said McConnell by the executors of said J. W. Taylor for the purpose of subjecting to sale the land sold to said McConnell by William and A. G. Cox for the satisfaction of said judgment, and enforcing the vendor's lien as to said last note; and on the 6th day of March, 1875, a decree was obtained in said court in favor of said Taylor's executors for the sum of $6,200.00, and the sale of said land was directed.

. It seems however, that in the month of February, 1874, one Adam Groseclose brought a chancery suit in the Circuit Court of Wythe county, Va., to enforce certain liens against said tract of land sold by said William and A. G. Cox to said Thomas G. McConnell, which liens existed against said McConnell's land and were prior to the sale made by said

William and A. G. Cox to T. G. McConnell, and the said suit in chancery brought by the executors of J. W. Taylor was consolidated therewith, and such proceedings were taken in said suits, that a decree was rendered therein directing a sale of said land to satisfy said liens, which were prior and superior to the vendor's lien reserved by said Coxes in their conveyance to said McConnell; that said tract of land was sold by a commissioner appointed by said court, and brought $4,000.00 and after satisfying said prior liens, which existed against said lands at the time said T. G. McConnell purchased it, the entire purchase-money was absorbed and consumed, with the exception of about $209.00. At that time said T. G. McConnell was the owner of several other tracts of land situated in the county of Wythe, Va., and continued to own said lands for several years thereafter, as is shown by the deed of trust dated the 1st day of September, 1876, executed by said McConnell to John G. Kreger, trustee, on the land conveyed to him by Isaac Painter and Eveline Painter. The land was afterwards sold on the 8th day of March, 1880, by said Kreger, trustee, and at said sale David G. Thomas, the *cestui que trust*, became the purchaser, and he afterwards sold the same to Crockett & Co., of Wythe county, for $6,000.00, which sales took place without objection on the part of any of the judgment-creditors of McConnell; and, if any objection had been made by the executors of John W. Taylor, they would have been unavailing, for the reason that the consideration for the obligations, on which the judgments had been obtained by said executors, had failed by reason of prior liens upon the land, for which they were executed by said McConnell to said Coxes, and this is mentioned merely to show, that, if the judgments obtained by said executors of Taylor had been valid, there was plenty of property to satisfy them, and that they were not lost by want of diligence on the part of said executors.

About this time or shortly afterwards the Lynchburg Insurance & Banking Company and others instituted a chancery suit in the Circuit Court of Washington county, to subject the lands of said T. G. McConnell in that county to the satisfaction of certain judgment-liens set forth and described in their bill, and in January, 1878, said cases were referred to a com-

missioner to ascertain the liens existing on said lands and their priorities. L. T. Casby, one of the commissioners of said court, took said account, and during the time he was taking the same, the judgment of William and A. G. Cox for the Use of Frazier and Smith, Executors of the Estate of John W. Taylor, deceased, against T. G. McConnell, obtained as aforesaid in the county of Washington at the May term, 1874, for the sum of $3,100.00 with legal interest from the 1st day of October, 1871, till paid and costs $10.77 was presented before said commissioner, and the plaintiffs sought to have it allowed in accordance with its date and priority in said account, but an exception was filed to the allowance of said judgment as a lien to be satisfied in said suit, "because said judgment was rendered against said McConnell upon a note for the purchase-price in part of a tract of land in the county of Wythe sold by said Coxes to him, and after said sale to said McConnell the tract of land was sold for liens upon said land against the said Coxes, which were entitled to preference over the claim of McConnell as purchaser, which prior liens were mostly for purchase-money due from said Coxes on said land, and by reason of these liens said land was wholly lost to said McConnell, and it would be inequitable to subject the lands of said McConnell to the payment of said judgment;" and the record in the case of *Groseclose* v. *Cox, et al.* from the Circuit Court of Wythe county was presented before said commissioner in support of said exception, which exception was sustained by the commissioner, and his action was confirmed by the court, for reason that the subject, which was the consideration of such judgment, had been lost to said McConnell.

On the 26th day of June, 1877, the executor and heirs at law of John W. Taylor, deceased brought a chancery suit in the Circuit Court of McDowell county against James O. Cox and William Cox, the object of which was to subject two tracts of land situated in said county and belonging to the defendant James O. Cox, to the payment of a debt due said executor of the estate of John W. Taylor, deceased, the sum of $262.50 with interest thereon from the 2d day of April, 1870, till paid and also a debt due plaintiffs from said James O. Cox for the sum of $3,663.79 with interest thereon from

the 1st day of April, 1873, till paid. . In said suit an order of attachment was sued out and levied upon the lands of said defendant, James O. Cox, and, the defendants being non-residents, an order of publication was taken and published against them. The plaintiffs in their bill allege the facts with regard to the execution of the note by the defendants James O. Cox, William Cox and John W. Taylor to Susan Spiller for $2,613.00 with interest thereon from the 2d day of August, 1858 ; also as to judgment being taken upon said note against the makers thereof, and that an execution on said judgment was issued and directed to the sheriff of Tazewell county ; and that $262.50 were realized in said county out of the personal property of said John W. Taylor, by which amount said judgment was credited as of the 12th day of April, 1870. They also state the facts with reference to the lands belonging to the estate of John W. Taylor, deceased, situated in the county of Tazewell, being sold at the suit of said Susan Spiller to satisfy her judgment against said J. O. Cox, William Cox and John W. Taylor, and that said John W. Taylor died during the pendency of said suit, and that said land when sold was the property of the plaintiffs, John M. Smith and Margaret, his wife, Jacob T. Frazier and Maria, his wife, James C. Moore and Sarah E., his wife, and Julia S. Taylor, as devisees of John W. Taylor, and that the judgment of said Susan Spiller, for which said lands were sold, amounted to $3,663.79. They also set forth the facts in regard to the transfer of said McConnell notes to J. T. Frazier, one of the executors of said John W. Taylor, as collateral security, with authority to use them so far as they would pay said judgment of Susan Spiller against J. O. Cox, William Cox and John W. Taylor ; and they also state the efforts they made to collect said collaterals, and their failure to realize anything thereon. They then allege that the defendant, J. O. Cox, is the owner of the two tracts of land lying in McDowell county,—one containing 9,988 acres, the other 1,730 acres ; that said James O. Cox is insolvent and is a non-resident residing in the state of Tennessee ; and pray that said J. M. Smith as executor as aforesaid may recover of said J. O. Cox the sum of $262.50 with interest thereon from the 12th day of April, 1870, and that the plaintiff's also recover the further sum of $3,663.79 with in-

terest from the 1st day of April, 1873, being the residue of said judgment of said Susan Spiller, for the payment of which the lands of plaintiffs were sold as aforesaid; that they have a right to attach the lands of said J. O. Cox lying in said county of McDowell for the payment of said debts, he being a non-resident, and that they have sued out attachments against the lands aforesaid, which have been levied thereon.

The bill in this cause was filed at July rules, 1877, and security for costs was then required from plaintiffs. At August rules following the security for costs was given. At the October term, 1877, additional security for costs was required by the defendants and promptly given by the plaintiffs; and a motion was then made to quash the attachment issued in the cause, which motion was sustained. The defendants then tendered their demurrer to plaintiff's bill, and the defendant William Cox tendered his answer to the same.

At the October term, 1884, of said Circuit Court, a decree was rendered, in which it is recited, that the cause came on to be heard upon the bill and exhibits filed therewith, the attachment duly levied on the lands of the defendant J. O. Cox, the answer of William Cox and exhibits therewith, the replication to said answer, and the depositions taken and former orders in the cause, *etc.;* and said decree proceeds to decree in favor of the plaintiff John M. Smith, as executor, the sum of $227.14 with interest from date of decree, and in favor of John M. Smith, in his own right, and the other plaintiffs the sum of $3,663.79 with interest from the 12th day of April, 1873, till paid and costs,—holding that the plaintiffs have a lien on the lands of the defendant, James O. Cox, lying in McDowell county by reason of their attachment, and directing a sale of said lands by a special commissioner.

On the 9th day of April, 1885, James O. Cox appeared and presented his petition praying the court to restrain the plaintiffs and the commissioner from further proceeding under the decree of October term, 1884, and for a rehearing of the cause, which prayer was granted, and said petition was filed: and at the May term, 1886, said decree rendered at the October term, 1884, directing a sale of said lands was

set aside, and leave was granted said J. O. Cox to file his answer, which was accordingly done; and at a subsequent day the plaintiffs after objecting to said answer and having their objection overruled, replied generally thereto.

The answers of both James O. Cox and William Cox filed in this cause make no contest as to the validity of the plaintiffs' claims originally, but by way of avoiding and preventing a decree for the same they claim, that the executors of John W. Taylor's estate did not use due diligence in the collection of the MacConnell notes assigned to them as collaterals: that if the lands, for which the MacConnell notes were executed as part of the purchase-money were insufficient to pay the same or were absorbed by the payment of prior liens, they should have amended their bill filed in Wythe county and should have proceeded against the other lands of Mac-Connell lying in said county; that they were not parties to the proceedings in the courts of Washington and Wythe counties, and that said executors should have appealed from the decree of the Circuit Court of Washington county rendered on the 20th day of January, 1880, or notified the defendants thereof, so that they could have appealed; and that the plaintiffs, while holding said collaterals, could not proceed on their original claim.

It will be perceived, that the judgment of the Circuit Court of Washington county for $3,100.00 with interest from the 1st day of October, 1871, till paid and costs, $10.77, which bears date May, 1874, and was docketed October 21, 1874, and which was rejected by Commissioner L. T. Casby in ascertaining the liens upon the lands of T. G. McConnell in the chancery suit in Washington county, whose action was confirmed by the court, was a judgment in the names of William Cox and Augustus G. Cox, who sued for the benefit of Jacob T. Frazier and John W. Smith, executors of John W. Taylor, deceased, against said T. G. McConnell and William Cox, one of the defendants in this suit and the assignor of said McConnell. In the case of *Goodall* v. *Stewart*, 2 Hen. & M. 105, it was held, that a return of "No property found" on an execution against the obligor was sufficient to charge the assignor. In the case of *Wilson's Adm'rs* v. *Barclay's Ex'r*, 22 Gratt. 534, it was held, that it was the duty

of the assignee to diligently pursue a specific lien, before he can have recourse upon the assignor. In this case there was a vendors' lien, and that was diligently pursued until it was exhausted. It is however claimed by the defendants, that the executors of the estate of said Taylor should have appealed from the action of the Circuit Court of Washington county in refusing to allow said judgment against said McConnell to be proved in the case of *Lynchbarg Ins. Co.* v. *McConnell and others,* in Washington county. That this was not a condition precedent to the right of recovering said judgment against the defendants seems to have been decided in the case of *Arnold* v. *Hickman,* 6 Munf. 15, where it is held, if a judgment of a county court be assigned, and afterwards reversed by a superior court of law, the assignee may thereupon sue the assignor without carrying the case to the Court of Appeals.

It appears, that the Circuit Court of McDowell county in its decree rendered at the October term, 1886, sustained the demurrer of James O. Cox to the plaintiffs' bill, and on their motion they had leave to amend at bar, which was accordingly done, and there was no demurrer or objection to the bill as amended; and the decree recites, that the cause came on to be heard upon the bill as amended and exhibits therewith filed, the attachment duly levied upon the lands of the defendant James O. Cox, the answers of William and James Cox and exhibits therewith filed and the replications thereto *etc.* Counsel for the appellants however insisted in their argument of this case that the court should have continued said case for one term, when the defendants' demurrer was sustained, and the plaintiffs were allowed to amend at bar. A sufficient reply to this claim consists in the fact, that no such delay was asked, and I do not understand such a delay to be in accordance with the practice in this State. The defendant, James O. Cox, had already filed an answer, which was responsive to the allegation inserted in the bill by way of amendment,—at least, the defendants seemed to so consider their answers, as they tendered no demurrer or answer to said bill as amended,—and the cause came on to be heard upon the bill as amended and the answers *etc.*

Under the circumstances detailed, I do not consider that

the Circuit Court of McDowell county erred in hearing said cause when it did, without further delay.

A question of some difficulty, and about which there has been considerable controversy both in the state of Virginia and in this State, is suggested by the fact, that the attachment sued out in this case and levied on the lands of the defendant James O. Cox, mentioned and described in the bill, was quashed by the court several years before the final decree was rendered, and, so far as appears from the printed record, no other affidavit was filed and no other attachment issued, and yet the final decree recites, that the cause came on to be heard upon the attachment duly levied upon the lands of the defendant James O. Cox, and holds, that the plaintiffs have a lien by reason of their said attachment on the 9,988 acres of land belonging to the defendant, James O. Cox, lying in McDowell county, and directs, that unless the sums herein decreed be paid within thirty days, the lands be sold by a commissioner therein named upon the terms and provisions therein set forth.

In the case of *O'Brien* v. *Stephens*, 11 Gratt. 610, the Court of Appeals of Virginia, acting upon a statute passed April 3, 1852, which is almost identical with ours, holds: "If an absent defendant does not appear in the cause, there can not be a personal decree against him, but the attached effects can alone be subjected; but, if he does appear, there may be a personal decree only against him, or there may be both a personal decree and a decree subjecting the attached effects." This is the language used in the fourth section of the syllabus in that case. Judge SAMUELS however in delivering the opinion of the court on page 613, says:

"The defendants however appeared and made defense; thereby putting themselves fully under the control of the court for every legitimate purpose in the cause. The attachment was intended to perform two several and distinct functions,—one to give the absent defendant notice of the suit brought against him. This mode of giving notice by levying on property was formerly in familiar use. In the case before us it became unnecessary to resort to this mode of notice, inasmuch as the absent defendant appeared and defended himself. The other function of the attachment is

to give complainants security for the payment of their demand. This operation of the attachment is wholly for the benefit of the complainants; if waived or omitted, it can in no wise injure the defendant, seeing that he has already had notice to defend himself and has acted accordingly. The complainants, if they elect to do so, may wave a part of their remedy and rely upon another part. They may therefore take a mere personal decree against the defendants before the court, which decree the court in virtue of its jurisdiction over the parties now before it may lawfully render, or they may hereafter resort to the remedy by attachment, seeing that the statute authorizes such resort after the suit is brought. * * * * "I am therefore clearly of opinion that the only decree complainants could have had against Stephens, if he had not appeared and made defense, would have been for satisfaction out of his property attached under the process provided by the statute of 1852."

Now, it will be perceived, that the claim asserted in the case of *O'Brien* v. *Stephens* was purely legal in its character, it being a suit upon a forfeited forthcoming bond; but the court holds, that the nature of the claim asserted, the residence of the defendant Stephens and the location of his property gave to the Circuit Court jurisdiction of the subject. In that case no attachment had been sued out or levied, but the court held, that the case stated in the bill was such, that the affidavit might be made. and the attachment sued out after the bill was filed, and that the affidavit and attachment were not essential to the jurisdiction of the court, at the time the cause was heard on demurrer. In the case of *Cirode* y. *Buchanan*, 22 Gratt. 205, it seems, that a bill was filed in the Circuit Court of Smith county, Va., by an administrator, setting out a money decree obtained in the District Court of Chancery for the Northern district of Alabama, against one Frank A. Sanders, for $12,271.49 and costs, in which bill the plaintiff sets up that said' defendant has no property in Alabama, out of which said decree can be satisfied, but that he has a large and valuable real estate in the State of Virginia within the jurisdiction of the court, describing it as being an undivided interest in certain tracts of land situated in said county, and alleging that said Frank A. Saunders is

a non-resident of the State of Virginia, and stating the object of said suit to be to subject said undivided interest in said land to sale to pay said debt. The suit was contested by W. Y. Cirode, the assignee in bankruptcy of said Frank A. Sanders. This proceeding was under the act of 1852, amending the Code of 1849 by adding the following words at the commencement of section 11 of chapter 151, to wit: "A claim to any debt or to damages for breach of any contract against a person who is not a resident of this State, but who has estate or debts due him within the same, may, if such claim exceed $20.00, exclusive of interest, be maintained in any court of equity for a county or corporation, in which there may be any such estate, or a defendant owing any debt to such non-resident."

Judge Moncure, in delivering the opinion of the court, (page 215,) says: "The effect of this amendment was to give to a creditor having a legal claim against a debtor residing out of the State, and owning estate or effects therein, the same right to bring a foreign attachment suit in equity as he would have had before the Code of 1849; the only difference being that since the amendment he has had an election to sue at law or in equity in such a case, whereas before the Code of 1849 he could sue in equity only."

Now to the first section of chapter 106 of the Code of West Virginia, which provided, when and how an attachment might be sued out in a suit at law or in equity, and what affidavit was required to be made at the commencement of the suit or at any time thereafter and before judgment, an amendment was made, which was passed February 27, 1871, in the following words:

"Section 1 of chapter 106 of the Code of West Virginia is hereby amended by adding at the end thereof the following: 'A claim, whether legal or equitable, for any debt or liability arising out of contract against a foreign corporation or a non-resident of this state, may be sued for and recovered in a court of equity, and an attachment in any action at law or suit in equity may be sued out as provided in this section, whether the debt or demand be due or not; but the affidavit, in case the debt or demand be not due, shall show at what time it will become due.'" It will thus be perceived that

the statute under which the bill was filed and proceedings taken in the case at bar is very similar, if not identical, with the statute which Judge MONCURE is discussing in the case of *Cirode* v. *Buchanan*, and on page 216 he says: "The grounds for equitable relief in such a case are threefold: (1) That a debt is due to the plaintiff; (2) that the debtor is a non-resident of the state; (3) that he has estate or effects within the state."

All of these matters seem to have been clearly and properly alleged by the plaintiffs, J. M. Smith and others, and in addition thereto they allege, that they are entitled to recover the debt in the bill described, and that the only means they have of realizing said debt is to resort to the lands of James O. Cox, who is a non-resident of the State, and that they have a right to attach and subject said real estate belonging to said J. O. Cox lying in the county of McDowell to the payment of said debts. These allegations, if true, clearly entitle the plaintiffs to relief in a court of equity. In the case of *Coleman* v. *Waters*, 13 W. Va. 278, which was a suit in the nature of a foreign attachment, this court held:

When a court of equity has properly taken jurisdiction of a cause against an absent defendant, it must proceed to give relief according to the principles of equity, and, if the absent defendant appear and answer, there may be a personal decree only against him, or there may be both a personal decree and a decree subjecting the attached effects."

In that case, it is true, an order of attachment was sued out and levied, but a personal decree was taken against the absent defendant without subjecting to sale the estate attached. Judge HAYMOND, in delivering the opinion of the court in that case, quoted with approval the case of *O'Brien* v. *Stephens* above referred to holding, that, if the absent defendant does appear, there may be a personal decree only against him, or there may be a personal decree and a decree subjecting the attached effects; and if the debtor appears, and the attachment has not been sued out or levied, there may still be a personal decree against him; or the plaintiff may after the debtor's appearance make the affidavit, sue out an attachment and have it levied on the effects of the debtor and have them subjected: holding that, "at the time said

suit was commenced, to wit, on the 7th of October, 1872, and since, the law of this state relative to foreign attachments in equity against non-residents was and is the same substantially, as to matters in question in that case, as the law in Virginia under which said case of *O'Brien* v. *Stephens* was decided."

In the light of these decisions I am of the opinion upon the case presented by the record, that notwithstanding the fact, that the attachment issued in the cause was quashed, the Circuit Court of McDowell county had a right, even, if there was no attachment, after the appearance of the defendant, James O. Cox, to render a personal decree against him for the sum of $6,507.40 in favor of John M. Smith in his own right and Margaret S. Smith, his wife, Jacob T. Frazier and Maria V., his wife, James C. Moore and Sarah E., his wife, and Henry Harrison, administrator of India, Moore, deceased, with legal interest from the date of the decree, and costs.

But can it be held by this Court that there was no attachment in this case sued out and levied subsequent to the date, of the decree at the October term, 1877, of the Circuit Court of McDowell county, which appears to have quashed the first attachment sued out in the case, in the face of two decrees rendered in said cause at subsequent dates, both of which recite, that the cause came on to be heard upon the attachment duly levied upon the lands of the defendant, James O. Cox? It is true, that the clerk of the Circuit Court in copying said record does not copy an affidavit or attachment of subsequent date to the decree quashing said first-named attachment; but the statute allows an attachment to be sued out after the institution of the suit at any time before judgment. Is it to be presumed, that the Circuit Court of said county would in two successive decrees recite the fact, that the case came on to be heard upon the attachment sued out and levied, if there was no such attachment? I think not.

In the case of *Moore* v. *Holt*, 10 Gratt. 284, it is held: "Where the decree states, that the order of publication against the absent defendant had been duly published, it is to be taken in an appellate court, that everything required by the statute has been done;" and in this case, the decrees stating

that the case was heard upon the attachment duly levied upon the lands of the defendant James O. Cox, it is to be taken that there was an attachment regularly sued out and properly levied upon said lands.

I am therefore of opinion to affirm the decree of the Circuit Court of McDowell county rendered in this case, except so far as it holds, that the sum of $262.50 paid by John W. Taylor in his lifetime on the judgment of said Susan Spiller is barred by the statute of limitations and ought not to be recovered by John M. Smith, executor of said John W. Taylor; and in that respect said decree is reversed, as no plea of the statute of limitations seems to have been made or relied on in this case; and, this court proceeding to render such decree as should have been rendered by the court below in reference to the amount so paid by John W. Taylor in his lifetime, it is ordered, adjudged and decreed, that the defendant, James O. Cox, do pay to said John M. Smith, executor of John W. Taylor, deceased, the sum of $522.11, the amount paid by said John W. Taylor in his lifetime as aforesaid, with interest added to the 6th day of October, 1886, the date of said decree, with interest thereon from that date, and that said sum be paid out of the proceeds of said land, when sold; and this cause is remanded to the Circuit Court of McDowell county for further proceedings to be had therein; and the appellants must pay the costs of this appeal.

REVERSED IN PART.   REMANDED.