(32 Misc. Rep. 224.)

## In re NORTON'S ESTATE.

(Surrogate's Court, Cattaraugus County. July, 1900.)

**1. JUDGMENTS—VALIDITY—PRESUMPTION.**

Under the statute of Pennsylvania providing that a judgment obtained in a court of limited jurisdiction on being docketed in the court of common pleas, a court of general jurisdiction, "shall thereafter be and have all the force and effect of a judgment originally obtained in the court of common pleas," a judgment obtained in the alderman's court, and docketed in the court of common pleas, is entitled to all presumptions of jurisdiction as if originally rendered in that court, and it will be presumed, in the absence of an affirmative showing to the contrary, that the alderman's court had jurisdiction.

**2. SAME—FOREIGN JUDGMENTS—JURISDICTION.**

The United States constitutional provision that full faith and credit shall be given in each state to the public acts, records, and judicial proceedings of another state, does not preclude an inquiry into the question of the jurisdiction of the court of another state to render judgment.

**3. PROCESS—SUBSTITUTED SERVICE.**

Where it appears that a defendant, at the time of an alleged substituted service on him by leaving a copy of the summons at his dwelling house, as authorized by statute, had in fact no dwelling house in the state, having shortly before removed therefrom, the service was insufficient.

Proceeding by Theresa L. Knapp for the allowance of a claim against the estate of Julia M. Norton, deceased, on a judicial settlement of the administrators' account. Claim disallowed.

G. W. Cole, for administrator.

W. R. Pinder, for creditor.

DAVIE, S. The only controversy upon this accounting relates to the claim of Theresa L. Knapp against the estate, arising out of the following facts: On September 28, 1891, the claimant recovered a judgment against the decedent for $209.71 and $5.53 costs, before an alderman of the city of Bradford, Pa., and now seeks to enforce the same against the representative of the estate. The validity of this judgment is controverted by the administrator on the ground that the court rendering the same acquired no jurisdiction of the person of the defendant. The parties have duly stipulated, pursuant to the provisions of section 1822 of the Code of Civil Procedure, that this claim might be heard and determined on judicial settlement. It appears from the evidence that under the laws of the state of Pennsylvania the transcript of a judgment rendered by an alderman may be filed in the office of the prothonotary of the county, and that the judgment docketed thereon shall thereafter be and have all the force and effect of a judgment originally obtained in the court of common pleas; an alderman's court being one of limited jurisdiction, and the common pleas one of record and of general jurisdiction. The summons on which this judgment was rendered was not personally served, and the recitals in the record fail to show affirmatively that the court had acquired jurisdiction by substituted service in the.

manner authorized by the laws of that state. The proof presented by the claimant supplemental to the record is unsatisfactory, but it is asserted that such defect in the affirmative proof is remedied by the well-established presumption in favor of the jurisdiction of courts of general jurisdiction. Is such presumption operative here, this judgment having been originally rendered by a court of limited jurisdiction? The statute of the state of Pennsylvania provides that a summons issued by a justice or alderman shall be served on the defendant by a constable "by producing the original summons to and informing him of the contents thereof, or leaving a copy of it at his dwelling house in the presence of one or more of his family or neighbors at least five days before the hearing." The proof of service contained in the exemplified record of the judgment is as follows: "Returned on oath—served the within writ of summons Sept. 23rd, 1891, upon Mrs. J. M. Norton, the within-named Deft., by leaving a true and attested copy of the original at her dwelling house in presence of an adult member of her family. Tadder C." While the term "Tadder C." is not very lucid from a legal standpoint, yet it does not require a very vigorous exercise of the imagination to construe it as meaning "Tadder, Constable"; but the serious defect in the return is that it fails to show where the alleged dwelling house of defendant was, or whether such dwelling house was within the territorial jurisdiction of the alderman. Is this defect cured by the presumption referred to? No Pennsylvania statute or decision is produced showing what presumption attaches to a judgment docketed under the provisions of the statute cited, but it seems to be conceded by both parties that this question should be determined in accordance with the laws and decisions of the state of New York. The rule is well settled in this state that, where courts of general jurisdiction have assumed to act, it will be presumed, until the contrary is affirmatively shown, that they had jurisdiction of the person and subject-matter, while courts of limited jurisdiction are bound to show affirmatively the facts giving jurisdiction. Harrington v. People, 6 Barb. 607–610; Manning v. Johnson, 7 Barb. 457; Sheldon v. Wright, 5 N. Y. 497–511; Turner v. Roby, 3 N. Y. 193. Under the cases cited it is apparent that no presumption of jurisdiction could be indulged in favor of the judgment while it remained one of the alderman's court. Does the docket of this judgment in the common pleas relieve it of its disability in this particular, and entitle it to all the presumption that would have attached had it been originally obtained in the court of common pleas? The counsel for the administrator urges with considerable force that the purpose of the statute in permitting the filing of the transcript and docketing judgment thereon was to afford to the judgment creditor additional remedies for the enforcement of his claim, but that it was not the intention of the legislature to modify the inherent qualities of the judgment of an inferior court by giving it, in consequence of the purely clerical process of docketing on transcript without the exercise of any judicial function, the standing and dignity of a judgment of a court of general jurisdiction. It might be easy to adopt this

theory were it not for the plain, unequivocal phraseology of the Pennsylvania statute referred to. It was undoubtedly competent for the legislature to give such effect to the act of filing transcript and docketing judgment in the court of common pleas as it deemed proper, and such effect is clearly defined by the statute which provides: "Such judgment shall thereafter be and have all the force and effect of a judgment originally obtained in the court of common pleas of said county." In view of the language of this statute, the construction would be unwarranted to hold that the judgment had become one of a court of record for certain purposes, but not for others; that it had been transformed into a judgment of the common pleas for the purpose of enforcing collection, but not for the purpose of upholding its validity by the presumption attaching to the original judgments of that court. I am clearly of the opinion that when this judgment became one of the common pleas by compliance with the statute relating to filing a transcript it became entitled to all presumptions of jurisdiction as fully as if it had been originally rendered in that court. This conclusion imposes upon the administrator the burden of showing affirmatively that such jurisdiction did not exist. The presumption referred to is not conclusive. Even the recitals of jurisdictional facts contained in the record may be rebutted. The judgment of a court of another state has no force or effect in this state unless the court rendering the same had acquired jurisdiction of the subject-matter and the person. Want of jurisdiction may always be shown. Kerr v. Kerr, 41 N. Y. 272; Windsor v. McVeigh, 93 U. S. 274, 23 L. Ed. 914. The constitutional provision that full faith and credit shall be given in each state to the public acts, records, and judicial proceedings of any other state does not preclude an inquiry into the question of jurisdiction. Pennywit v. Foote, 22 Am. Rep. 340; Hunt v. Hunt, 72 N. Y. 217.

On the part of the administrator it is claimed that the alleged substituted service by leaving a copy of the summons at the dwelling house of defendant was invalid, for the reason that at the time of such service defendant in fact had no dwelling house in the city of Bradford, or in the state of Pennsylvania. It appears from the evidence that for some time prior to the issuing of the summons the decedent had resided in Bradford, and as a tenant had occupied a dwelling belonging to the claimant. Being in arrears in payment of rent, the claimant had caused to be issued a process under the laws of that state whereby substantially all of the household goods and effects of the decedent had been seized and sold, such seizure and sale terminating the tenancy. The decedent, being thereby deprived of the means of maintaining a dwelling for herself and family, went to reside with a son in the state of New York. Such seizure, sale, and removal from the city of Bradford were prior to the date of the alleged service. At the time of such service decedent had gone from Bradford with the intention of residing elsewhere. She in fact had no dwelling house in the state of Pennsylvania at that time. The constable Tadder was called as a witness by the claimant, and on cross-examination testified as follows:

"Q. Did you serve the summons? A. Yes, sir. Q. Did you return that you served the summons by leaving a copy at the dwelling house? A. I don't know. I never saw it. I have never seen it from that day to this. Might have been by copy, might have been by personal service. Q. You can't tell whether you served it personally or by leaving a copy? A. No. Q. Nor, if you left a copy, whom you left it with? A. No. Q. You couldn't tell how you served it? A. No, sir. Q. Can you remember anything about the circumstances of the service? A. No, I could not. Q. Do you know, or have you any personal knowledge of, where Mrs. Norton was at the time you served the summons? A. No."

This witness also testified that he told the attorney for the administrator that the house where the defendant lived was on Webster street, in the city of Bradford, and that there was a thin partition running between the part occupied by the decedent as a boarding house and the other part occupied by Mrs. Hughes as a grocery, and that Mrs. Hughes would remember the facts relating to the service. Mrs. Hughes was called and sworn as a witness on behalf of the administrator. She testified that she remembered the circumstances of the service of the summons; that Mrs. Norton had lived in the house immediately joining hers, but that the two places were in no way connected; that the copy of the summons was left with her, and that prior to that Mrs. Norton had left Bradford, and gone to her son's, at State Line, to reside. She refreshes her recollection as to the particular date of Mrs. Norton's leaving by having purchased certain articles of the decedent the day she went, and giving her credit upon her books on the same day for the purchase price. Her books, being produced in court, showed the date of such purchase and credit to be September 21st. The substituted service by leaving copy of summons at what was assumed to be, but what in fact was not, the dwelling house of the defendant, was entirely insufficient to confer jurisdiction. Consequently, as no proof has been made as to the merits of the original demand aside from the record of the judgment itself, the claim must be disallowed. A decree will be accordingly entered.

Decreed accordingly.