# CHARLESTON.

### E. P. WILLIAMSON v. W. L. TAYLOR.

## Submitted February 19, 1924. Decided April 8, 1924.

1. PROCESS.—*When Summons May be Served by Leaving Copy Posted at Front Door of Defendant's Usual Place of Residence, Stated.*

   Under section 1, chapter 121, Barnes' Code, 1923, a summons may be served by leaving a copy thereof posted at the front door of defendant's usual place of abode, if neither the defendant's wife nor any other person who is a member of defendant's family, and above the age of sixteen years, be found there and the defendant be not found. (p. 248).

2. SAME.—*"Usual Place of Abode" Means Place of Abode When Service is Made by Leaving Copy Posted at Front Door; Attempted Service by Leaving Copy at Defendant's Former Place of Abode, But From Which he had on Good Faith, Removed, Held Invalid.*

   Under the statute "the usual place of abode" means the customary place of abode at the very moment the writ is left posted; hence where the writ is left posted at a former place of abode, but from which defendant had in good faith removed and taken up his place of abode elsewhere, service so had is ineffective and invalid. (p. 251).

Error to Circuit Court, Cabell County.

Action by E. P. Williamson against W. L. Taylor. Judgment for plaintiff, and defendant brings error.

*Reversed and remanded.*

*W. L. Taylor* and *Jean F. Smith,* for plaintiff in error.
*Simms & Staker,* for defendant in error.

MEREDITH, PRESIDENT :

Defendant seeks to reverse a judgment rendered against him by the circuit court of Cabell County in an action of debt upon certain notes.

The summons was issued June 27, 1922, returnable to July Rules. It was executed June 28th as shown by the return ''by posting and leaving posted a true copy thereof on the front door of the usual place of abode of W. L. Taylor 1018 Tenth Ave. in Cabell County, West Virginia, the said W. L. Taylor not being found at his usual place of abode in Cabell County, West Virginia, on the above date, his wife and no member of his family being found at his usual place of abode in Cabell County, West Virginia, on the above date.''

In defendant's special plea in abatement filed in due time, he alleges that at the time of the alleged service of summons in the case, he had no usual place of abode in Cabell County, West Virginia, but that his usual place of abode was at Omar, Logan County, West Virginia, and that the alleged service of summons by posting a copy thereof at the front door of the supposed place of abode of the defendant was without authority. The issue joined thereon was tried by the court. Defendant did not formally waive a jury and he assigns this as error; but we prefer to dispose of the issue on the merits rather than upon a mere technicality. The court found that defendant's usual place of abode was at No. 1018 Tenth Avenue in the City of Huntington, refused to sustain the truth of the plea and to dismiss the action. Defendant took proper exceptions to the finding of the court, pleaded nil debet, issue was joined, and the case was tried by a jury, resulting in a verdict and judgment for plaintiff.

While a number of errors are assigned relating to the trial of the case before the jury, we deem it proper to discuss but the one raised by defendant's plea in abatement. If the court did not obtain jurisdiction by process duly served upon the defendant, then it could not proceed to trial of the main issue. After raising that issue by plea, if that

question was decided against him, he did not waive it by pleading the general issue as to the debt declared on and proceeding to trial thereon.

Our statute, section 6, chapter 124, Barnes' Code, 1923, provides that a summons may be served as a notice is served under section 1, chapter 121 of the Code. Section 1, chapter 121 provides:

> "A notice, no particular mode of serving which is prescribed, may be served (1) by delivering a copy thereof in writing to the party in person; (2) if he be not found, by delivering such copy at his usual place of abode, to his wife or to any other person found there who is a member of his family, and above the age of sixteen years, and giving information of the purport of such copy to the person to whom it is delivered; or (3) if neither his wife nor any such other person be found there, and he be not found, by having such copy posted at the front door of said place of abode."

The point of inquiry is whether defendant's usual place of abode on June 28, 1922, the date the summons for him was left posted on the front door of a room in a building at 1018 Tenth Avenue in Huntington was in that room. If that was then his usual place of abode, the service was valid; if it was not, the service was not a legal service.

In discussing this statute in *Capehart, Adm'r. v. Cunningham, Adm'r.*, 12 W. Va. 750, Judge Moore says:

> "What does the statute mean by the expression '*his usual place of abode*'?
>
> When we consider that the object of the statute was, to enable the defendant to know, or have notice of the action against him, that he might protect his rights therein, it is clear the statute meant his usual place of abode *eo instanti*, that the summons was posted, not a place of casual abode, but one of present abiding. It would be absurd to hold, that a boarding house, or place where a person stopped temporarily when visiting a city or country on matters of business or socially, should be considered his usual place of abode when his visit or stay had ended and he absent, so as to make the posting of a summons on the front door thereof legal notice."

In *Grant* v. *Dalliber*, 11 Conn. 234, the defendant had

been living with his family in his dwelling house in Tor-
rington, but while he was confined in state's prison at
Wethersfield, service of a writ was had by leaving a copy
"At his usual place of abode" in Torrington, where his
family was then residing. It was held that the prison
was not his usual place of abode, since he was restrained
there against his will, and had a place of abode at Torring-
ton.

But in Dunn's Appeal, 35 Conn. 82, the statute required
that service of an application for the appointment of a con-
servator, should be made by *leaving a copy at the usual
place of abode of the respondent;* Dunn, the respondent,
was in the county jail as a prisoner, and the house where
he last resided, had, while he was imprisoned, been sold
by a trustee of his estate and possession taken by the pur-
chaser. It was held that service might be had by leaving
a copy with him at the jail since he then had no other place
of abode.

In *White* v. *Primm,* 36 Ill. 416, it was held that a hotel
or boarding house at which a stranger from another state
is sojourning for a few days is not to be considered his usual
place of abode for the service of process under a statute
similar to ours.

In *Kline* v. *Kline,* 104 Ill. App. 274, it was held that
leaving the summons at defendant's former place of resi-
dence, with a person not a member of her family who im-
mediately forwarded it to defendant, did not satisfy the
statute which provided that it should be left at the defend-
ant's usual place of abode with some person of the family,
of the age of ten years or upwards and informing such per-
son of the contents thereof.

In Norton's Estate, 66 N· Y. Supp. 317, it was held that
where it appears that a defendant, at the time of an alleged
substituted service on him by leaving a copy of the sum-
mons at his dwelling house, as authorized by statutes, had
in fact no dwelling house in the state, having shortly before
removed therefrom, the service was insufficient.

In *Mygatt* v. *Coe,* 63 N. J. L. 510, 44 Atl. 198, it was
held that under a statute providing that the service of sum-
mons on a defendant shall be made upon him in person

or by leaving it at his dwelling house or usual place of abode, the dwelling house or usual place of abode, within the meaning of the statute is the place where he is actually living at the time when the service is made; that leaving the summons at defendant's former residence, which he had recently abandoned, was not sufficient.

In *Missouri, K. & T. Trust Co.* v. *Norris*, 61 Minn. 256, 63 N. W. 634, it was held that under a statute providing for service of a summons on defendant at "the house of his usual abode" the expression "is not the equivalent of domicile, in all particulars, for one's place of abode or home once acquired does not necessarily continue until another one is obtained. A tramp may have a domicile, but no house of his usual abode. The term means a person's customary dwelling place or residence."

In *Gadsden* v. *Johnson*, 1 Nott & M'Cord (S. C.) 89, it was held that leaving a copy of the writ at defendant's house in Charleston during the winter and spring months, at which time the defendant resided in the country was not a valid service under a statute providing that the writ should be left at "the most usual and notorious place of the residence or habitation of the defendant."

In *Schlawig* v. *DePeyster et al.*, 83 Ia. 323, it was held in an action for the foreclosure of a mortgage, when service was made upon the mortgagor by delivering a copy of the notice to his wife at the place where she and the mortgagor's children resided in that state, but the mortgagor had about eighteen months before gone to another state intending to make his home there, and there engaged in business, built a house, shop and other buildings, voted at elections, sat upon juries and discharged other duties as a citizen, but did not remove his family there for several years though continually intending to do so, and visited them in Iowa at long intervals, that a decree of foreclosure based upon such a service was void for want of jurisdiction.

In *Earle* v. *McVeigh*, 91 U. S. 503, construing the Virginia statute, similar to ours, Mr. Justice CLIFFORD said:

> "When the law provides that notice may be posted on the 'front-door of the party's usual place of abode,' in the absence of the family, the intention evidently

is that the person against whom the notice is directed should then be living or have his home in the said house. He may be temporarily absent at the time the notice is posted; but the house must be his usual place of abode, so that, when he returns home, the copy of the process posted on the front-door will operate as notice which is all that the law requires. By the expression, 'the usual place of abode', the law does not mean the last place of abode; for a party may change his place of abode every month in the year. Instead of that, it is only on the door of his then present residence where the notice may be posted and constitutes a compliance with the legal requirement.''

In our own case of *Lewis V. Botkin,* 4 W. Va. 533, it was held a return showing the summons was left posted ''on the front door of defendant's dwelling house'' was insufficient; that ''dwelling house'' was not the equivalent of ''usual place of abode'', since one might have a dwelling house and not dwell or stay in it at and about the time of the service or attempted service of process.

For other authorities see 32 Cyc. p. 463, and cases cited; Alderson on Judicial Writs and Process, §101; *Heinemann* v. *Pier,* 110 Wis. 185, 85 N. W. 646; *Perry* v. *Perry,* 103 Ga. 706, 30 S. E. 663; *Fitzgerald* v. *Salentine,* 51 Mass. 436, 10 Metc. 436; *Sturgis* v. *Fay,* 16 Ind. 429; *Madison County Bank,* v. *Suman's Adm'r.,* 79 Mo. 527.

In the light of the foregoing authorities let us examine the facts. The testimony of the officer who posted the summons on what the return shows was ''the front door of his usual place of abode'' was to the effect that he acted upon information given him by Mrs. McCabley, who lived at that house, No. 1018 Tenth Avenue, which was to the effect that defendant roomed there, had paid the room rent, and she showed him the room in which defendant resided. The officer had no personal knowledge of his own, but acted solely upon the information given. The defendant testified that he was the attorney for the Atlantic Fuel and Steamship Company, and was also employed by, or connected with the Main Island Creek Coal Company; that he had his office with the Main Island Company in the Robson-Prichard Building in Huntington for about a year prior to June 15,

1922; that during this time he had a lodging place or room, at 1018 Tenth Avenue; that the offices of these two companies were moved from Huntington to Omar, Logan County, and this required his removal to that place; that on that date he removed his office and books to Omar, including his personal belongings, and from that time onward stayed at a club-house there; that at the time he moved he had paid his rent to Mrs. McCabley up to July 11th, and his duties requiring his coming to Huntington, he stayed there two nights after his removal to Omar, following the date of the posting of the summons. It appears that defendant's permanent home is at Baltimore, Maryland; that his family lives there, but for two weeks prior to June 15, 1922, his wife visited him in Huntington, and they lived in defendant's room; during this period they did light housekeeping, and bought some dishes and other small articles necessary for this purpose. When she went back home, these dishes and other articles, costing in all about $5.00, were boxed up preparatory to shipment to his wife in Baltimore, or to his daughter in Gate City, Virginia; this stuff, witness says, belonged to his wife and remained in the room for some time awaiting instructions as to shipment, when they were finally sent to Gate City, but that all of defendant's belongings were removed from the room June 15th. He further testifies under oath that when the summons was posted he was not a resident of Cabell County, but resided at Omar, Logan County; that his usual place of abode was at 1018 Tenth Avenue, Huntington, West Virginia, until June 15, 1922, but not afterward. We have detailed the substance of all the evidence on the question. Under these circumstances, we are of opinion that on the 28th day of June, 1922, the defendant's usual place of abode was not in Huntington, Cabell County, but at Omar, Logan County, and that the court erred in holding to the contrary.

We will therefore reverse the judgment, set aside the verdict of the jury, the finding of fact upon the issue joined on the plea in abatement, and remand the case for further proceedings.

*Reversed and remanded.*