701 S.E.2d 848

**Samantha BEANE, Plaintiff
Below, Appellee**

v.

**Barry J. DAILEY, II, Defendant
Below, Appellant.**

**No. 34630.**

Supreme Court of Appeals of
West Virginia.

Submitted Jan. 12, 2010.

Decided April 1, 2010.

Barry J. Dailey, II, Pro se Appellant.

PER CURIAM:

 This case is before this Court upon appeal of an order of the Circuit Court of Kanawha County entered January 8, 2008. In that order, the circuit court granted the appellee, Samantha Beane, a default judgment and awarded her damages which followed the circuit court's July 22, 2003, entry of default against the appellant, Barry Dailey, in this personal injury action arising out of a motor vehicle accident.[1] Mr. Dailey argues that he did not receive notification of

the civil action against him and that he was not a resident of West Virginia at the time of the accident or during the various proceedings thereafter. Based upon the record presented to this Court, as well as the relevant statutory and case law, this Court is of the opinion that the circuit court committed reversible error. Accordingly, we reverse the circuit court and remand the case for entry of an order to set aside both the July 22, 2003, and January 8, 2008, entries of default and default judgment.

## I.

## FACTS

According to a complaint filed on December 23, 2002, by the appellee, Samantha Beane, she was a passenger in a vehicle operated by Thomas Oxley that was involved in a December 26, 2000, accident at the intersection of Seventh Avenue and Beatrice Street, in Charleston, West Virginia, with a vehicle driven by the appellant, Barry J. Dailey, II. Ms. Beane contends that Mr. Dailey failed to maintain a proper lookout and caused his vehicle to violently collide with the automobile in which she was a passenger. She maintains that Mr. Dailey breached his duty of care to her by failing to maintain control of his vehicle, disregarded relevant traffic control, and was otherwise negligent in the operation of his vehicle, all of which proximately and directly caused her injuries.

On April 10, 2003, Ms. Beane's summons was served upon Mr. Dailey's mother at the address of 129 Perkins Avenue, Dunbar, West Virginia. Mr. Dailey, however, did not file an answer. Thereafter, on July 8, 2003, Ms. Beane filed a motion for default supported by an affidavit by her counsel, Henry Wood. In the affidavit, Mr. Wood attested

---

1. Even though the July 22, 2003, entry of default was entered nearly five years prior to the entry of the January 8, 2008, default judgment order, the entry of a default was an interlocutory order and, thus, was not a final appealable order to this Court. As such, Mr. Dailey's appeal of the 2008 default judgment order was timely filed in this Court and necessarily included a review of the 2003 entry of default. See Franklin D. Cleckley, et al., *Litigation Handbook on West Virginia Rules of Civil Procedure* § 55(a) at p. 1096 (3d ed.2008) ("Entry of default is interlocutory. It represents

a default on liability and until the amount of damages is ascertained there is no final judgment."). *See also Coury v. Tsapis*, 172 W.Va. 103, 106, 304 S.E.2d 7, 10 (1983) ("The ... distinction between a default and a default judgment has resulted in a recognition that a default order is interlocutory."). Likewise, in Syllabus Point 2 of *Cales v. Wills*, 212 W.Va. 232, 569 S.E.2d 479 (2002), this Court held that "[a] default relates to the issue of liability and a default judgment occurs after damages have been ascertained."

that Ms. Beane's complaint was personally served on Mr. Dailey's mother and that this could be confirmed by the return of service contained in the record. On July 22, 2003, in a one-page order, the circuit court entered an order of default and provided that a subsequent hearing would be held wherein the issues of liquidated and unliquidated damages would be addressed.

On October 1, 2005, a damages hearing was conducted, followed by Ms. Beane's filing of a submission of medical expenses. On January 8, 2008, the circuit court entered its default judgment order wherein it awarded Ms. Beane $449.86 as reimbursement of medical expenses and $1,600.00 in general compensatory damages, plus post-judgment interest. On April 25, 2008, Mr. Dailey filed an appeal of the judgment against him with this Court and stated that he was unaware of a trial, any hearings, or even the results of such hearings in the underlying case. He stated that he was not a resident of West Virginia at the time of the accident or during the pendency of the proceedings against him, and that the attempt of substitute service upon his mother at her West Virginia residence, resulted in insufficient service or process.

## II.

### STANDARD OF REVIEW

■ This case was brought as a direct appeal from a default judgment order. Ordinarily an appeal from a default judgment is made from a trial court's ruling denying a motion under Rule 55(c) of the West Virginia Rules of Civil Procedure.[2] It is through Rule 55(c) that litigants usually seek to set aside a default judgment. That is the better practice; however, the defendant in this case, acting pro se, did not file a Rule 55(c) motion with the trial court. "[W]e have recognized that a pro se litigant's . . . rights under the law should not be abridged simply because he or she is unfamiliar with legal procedures." *Cottrill v. Cottrill*, 219 W.Va. 51, 54, 631 S.E.2d 609, 612 (2006). Insofar as the

defendant is unrepresented, and was not aware that he should have filed a Rule 55(c) motion with the trial court, we treat this appeal as though the defendant was denied relief under Rule 55(c). This Court pointed out in *Kopelman and Associates, L.C. v. Collins*, 196 W.Va. 489, 494. n. 6, 473 S.E.2d 910, 915 n. 6 (1996) that " '[w]e are not bound by the label[s] employed below, and will treat [matters] made pursuant to' the most appropriate rule." (quoting *Murphy v. Smallridge*, 196 W.Va. 35, 36 n. 4, 468 S.E.2d 167, 168 n. 4 (1996)).

We have further indicated that in determining whether to set aside a default judgment under Rule 55(c), a court must consider the factors set out in Syllabus Point 3 of *Parsons v. Consolidated Gas Supply Corp.*, 163 W.Va. 464, 256 S.E.2d 758 (1979), and any ground for relief under Rule 60(b). *See* Syllabus Point 5, *Hardwood Group v. Larocco*, 219 W.Va. 56, 631 S.E.2d 614 (2006) ("In addressing a motion to set aside a default judgment, 'good cause' requires not only considering the factors set out in Syllabus point 3 of *Parsons v. Consolidated Gas Supply Corp.*, 163 W.Va. 464, 256 S.E.2d 758 (1979), but also requires a showing that a ground set out under Rule 60(b) of the West Virginia Rules of Civil Procedure has been satisfied.").

■ This Court has held that: "[a]ppellate review of the propriety of a default judgment focuses on the issue of whether the trial court abused its discretion in entering the default judgment." Syllabus Point 3, *Hinerman v. Levin*, 172 W.Va. 777, 310 S.E.2d 843 (1983). In the discussion that follows, however, it is clear that the default judgment in this case is void because the trial court did not have personal jurisdiction over the defendant, therefore we need not perform a *Parsons'* analysis. *See* Franklin D. Cleckley, et al., *Litigation Handbook on West Virginia Rules of Civil Procedure*, § 55(b)(2) (3d ed. Cum.Supp.2010) ("A default judgment rendered without personal ju-

---

**2.** Rule 55(c) of the West Virginia Rules of Civil Procedure provides:

Setting Aside Default. For good cause shown the court may set aside an entry of default and,

if a judgment by default has been entered, may likewise set it aside in accordance with Rule 60(b).

risdiction is void and, therefore, is a per se abuse of discretion if the trial court that entered the judgment lacked jurisdiction."). Where, however, "the issue on appeal from the circuit court is clearly a question of law . . .," we apply a *de novo* standard of review. Syllabus Point 1, in part, *Chrystal R.M. v. Charlie A.L.*, 194 W.Va. 138, 459 S.E.2d 415 (1995). With these principles in mind, the appellant's arguments will be considered.

## III.

### DISCUSSION

In this case, Mr. Dailey argues that the circuit court committed reversible error when it entered a default judgment against him and awarded Ms. Beane damages. Specifically, Mr. Dailey maintains that he was not aware of any "hearings, trials, or verdicts" in the lawsuit brought against him by Ms. Beane. He contends that his absence and lack of knowledge of the lawsuit was due to the fact that he was not a resident of West Virginia at the time. Mr. Dailey states that as of May of 2000, he was a service member in the United States Air Force, stationed in Missouri at Whiteman Air Force Base and was not a resident of West Virginia during any of the proceedings in which he was named as a defendant by Ms. Beane.[3]

Conversely, Ms. Beane did not file a response to Mr. Dailey's appeal with this Court. The Clerk of this Court sent correspondence to Ms. Beane's counsel below, Henry Wood; however, in a November 20, 2009, letter from Mr. Wood, he advised the Court that he was unsuccessful in contacting Ms. Beane and that he had not been hired nor did he have the authority to represent her on appeal. As a consequence, this Court does not have the benefit of Ms. Beane's response to any of Mr. Dailey's appellate arguments. Nonetheless, we have thoroughly reviewed the entire record before us and are mindful that "[i]t has always been the policy of this Court to protect each litigant's day in court." *Litten v. Peer*, 156 W.Va. 791, 797, 197 S.E.2d 322, 328 (1973).

The underlying argument proffered by Mr. Dailey is a matter of procedure that concerns a lack of proper notice and service under Rule 4(d) of the Rules of Civil Procedure. Rule 4(d) provides, in part,

Manner of Service. Personal or substitute service shall be made in the following manner:

(1) Individuals. Service upon an individual other than an infant, incompetent person, or convict may be made by:

(A) Delivering a copy of the summons and complaint to the individual personally; or

(B) Delivering a copy of the summons and complaint at the individual's dwelling place or usual place of abode to a member of the individual's family who is above the age of sixteen (16) years and by advising such person of the purport of the summons and complaint; or . . . .

The summons and complaint in this case was not personally served on Mr. Dailey as provided by Rule 4(d)(1)(A). Instead, the return of service shows that the summons was hand-delivered to Cheryl Dailey, the mother of Mr. Dailey, in an attempt by Ms. Beane at serving Mr. Dailey through substitute service as provided by Rule 4(d)(1)(B). The return of service in question provides as follows with the handwritten portions illustrated by italics:

I, *Shelia M. Anderson,* a credible person over the age of twenty-one years, being first duly sworn, on his/her oath says that he/she executed the within *Summons* upon *Cheryl Daily [sic] Mother of Barry Dailey, II at 129 Perkins Ave. Dunbar, WV,* in *Kanawha* County, West Virginia by hand delivering to *Cheryl Dailey mother of Barry Dailey, II* an exact and true copy on the *10th* day of *April,* 2003.

---

3. Since this Court reverses the default judgment entered below based upon insufficient service of process, we find it unnecessary to address any potential issues surrounding the Servicemembers Civil Relief Act (SCRA) in regard to Mr. Dailey's contention that he was a member of the United States Armed Forces. Nonetheless, this Court points out that a trial court is obligated to observe any applicable requirements of the SCRA, found at 50 App. U.S.C.A. §§ 501 *et seq.* The SCRA was enacted on December 19, 2003, as a recodification of the Soldiers' and Sailors' Civil Relief Act of 1940.

Based upon the return of service, along with an affidavit by Ms. Beane's counsel stating that "[t]he Summons and Complaint for the individual defendant was personally served upon Cheryl Daily [sic] (mother of defendant) on behalf of Mr. Dailey on the 10th day of April, 2003[,]" the circuit court entered a July 22, 2003, one-page default order.

The first issue with Ms. Beane's return of service is that it indicated that a summons was served upon Mr. Dailey's mother, not "a copy of the summons *and complaint*" as required by Rule 4(d)(1)(B). Next, nowhere within the return of service does it indicate that service was made "at the individual's dwelling place or usual place of abode to a member of the individual's family who is above the age of sixteen (16) years" nor does it indicate that service was perfected "by advising such person of the purport of the summons and complaint" as required by Rule 4(d)(1)(B).

From the outset it is important to note that there is absolutely no evidence whatsoever in the record showing that Mr. Dailey resided at his mother's home.. More specifically, the return of service did not provide that return of service was perfected "at [Mr. Dailey's] dwelling place or usual place of abode." In fact, the *only* information in the record before this Court regarding Mr. Dailey's dwelling place or usual place of abode comes from Mr. Dailey's assertions in his petition for appeal and appellate brief. Mr. Dailey attests to this Court that he was not a resident of West Virginia when Ms. Beane served a copy of her summons on his mother. If, in fact, Mr. Dailey did not reside in West Virginia, or if his mother's residence was not Mr. Dailey's "dwelling place or usual place of abode," then it is clear that the attempted substitute service of process upon his mother was inadequate.

■ In *Jones v. Crim & Peck,* 66 W.Va. 301, 66 S.E. 367, 368 (1909), this Court held that: "Before substituted service can take the place of, and be equivalent to, an actual personal service, all the requirements of the statute regarding the manner of such substituted service must be strictly complied with.... Such want of service renders the decrees based thereon absolutely void." (Ci-

tations omitted). Moreover, our case law is clear that a court that enters a judgment where there has been insufficient service of process is without jurisdiction to enter said judgment, "and a void judgment or decree is a mere nullity and may be attacked at any time." *Dierkes v. Dierkes,* 165 W.Va. 425, 430, 268 S.E.2d 142, 145 (1980). See Syllabus Point 7, *Aldrich v. Aldrich,* 147 W.Va. 269, 127 S.E.2d 385 (1962) judgment rev'd on other grounds by 378 U.S. 540, 84 S.Ct. 1687, 12 L.Ed.2d 1020 (1964); Syllabus Point 1, *Cable v. Cable,* 132 W.Va. 620, 53 S.E.2d 637 (1949). *See also Desmond v. Brennan,* 639 A.2d 1351 (R.I.1994); *In re Schmidt,* 436 N.W.2d 99 (Minn.1989); *In re Hall,* 173 Mont. 142, 566 P.2d 401 (1977); *Smith v. Hatgimisios,* 233 Ga. 354, 211 S.E.2d 306 (1974), aff'g 229 Ga. 475, 192 S.E.2d 270 (1972); *Shaddrix v. Womack,* 231 Ga. 628, 203 S.E.2d 225 (1974); *Webster v. Clanton,* 259 S.C. 387, 192 S.E.2d 214 (1972).

In *Myers v. Myers,* 128 W.Va. 160, 35 S.E.2d 847 (1945), this Court held that "[t]he entry of an order ... in the absence of 'reasonable notice ...' is reversible error." In that case, the wife who had been granted a divorce attempted to serve notice on her husband that she was seeking an allowance sufficient to permit her to defend against the appeal he was taking to this Court. This Court found that proper service of the notice had not been made on the husband in Ohio and therefore reversed the award. The notice was delivered to a Ms. Catherine Myers by a deputy sheriff of Ohio County, who made a return of service thereon as follows:

Executed the within and hereto annexed notice within Ohio County, West Virginia, this 19th day of December, 1944, as to within named Earl F. Myers not being found in Ohio County, by delivering a true copy thereof at his usual place of abode in said county to Catherine Myers she being his mother and found there and being a member of his family and above the age of 16 years and a resident of said Ohio County at the time of said service; also by then and there giving information of the purport of said copy to the said Catherine

Myers. W.H. Havercamp, D.S. for Sheriff of Ohio County Thomas B. Padden, S.O.C. 128 W.Va. at 162, 35 S.E.2d at 848.

The *Myers* Court found that the sheriff's return of service was "prima facie proof of service only, and that such return may be contradicted by parol evidence." 128 W.Va. at 165, 35 S.E.2d at 849. In that case, this Court found that the service upon Mr. Myers was improper based upon evidence presented that Mr. Myers' mother's home was not his usual place of abode at the time of delivery. The *Myers* Court explained: "We reach the conclusion that the testimony of Catherine Myers not being contradicted wholly disproves the prima facie evidence of substituted service based on the sheriff's return. The order here complained of was made without reasonable notice to Earl F. Myers and the entry thereof was error." *Id.* The *Myers* Court further explained that "[c]ounsel for Earl F. Myers seems to have had knowledge of the pending motion, but there is no evidence in the record that such knowledge had been imparted to Earl F. Myers, or that formal notice had been served on him[.]" and explained that the knowledge of Mr. Myers' counsel was not sufficient to provide notice to Mr. Myers. *Id.*

In *Williamson v. Taylor*, 96 W.Va. 246, 247, 122 S.E. 530, 531 (1924), the defendant argued that at the time of the alleged service of summons in his case that "he had no usual place of abode in Cabell county, W. Va., but that his usual place of abode was at Omar, Logan county, W Va., and that the alleged service of summons, by posting a copy thereof at the front door of the supposed place of abode of the defendant, was without authority." This Court explained that "[o]ur statute (section 6, c. 124, Barnes' Code 1923) provides that a summons may be served as a notice is served under section 1, c. 121, of the Code." Section 1, c. 121, provided:

A notice, no particular mode of serving which is prescribed, may be served [1] by delivering a copy thereof, in writing, to the party in person; or [2] if he be not found, by delivering such copy at his usual place of abode, to his wife or to any other person found there who is a member of his family, and above the age of 16 years, and giving

information of the purport of such copy to the person to whom it is delivered; or [3] if neither his wife nor any such other person be found there, and he be not found, by leaving such copy posted at the front door of said place of abode.

The point of inquiry by the *Taylor* Court was "whether defendant's usual place of abode on June 28, 1922, the date the summons for him was left posted on the front door of a room in a building at 1018 Tenth avenue, in Huntington, was in that room." At that time, the defendant was employed for a business that was located in Huntington, but had moved its offices to Omar on June 15, 1922. The defendant explained that although he had paid rent up to July 11, 1922, that he no longer was rooming there and had moved his belongings to Omar. The *Taylor* Court explained that "[i]f that was then his usual place of abode, the service was valid; if it was not, the service was not a legal service." The *Taylor* Court quoted this Court's earlier decision in *Capehart, Adm'r, v. Cunningham, Adm'r,* 12 W.Va. 750, 1878 WL 3117 (1878), wherein Judge Moore questioned:

What does the statute mean by the expression 'his usual place of abode'?

When we consider that the object of the statute was to enable the defendant to know, or have notice, of the action against him, that he might protect his rights therein, it is clear the statute meant his usual place of abode *eo instanti* that the summons was posted, not a place of casual abode, but one of present abiding. It would be absurd to hold that a boarding house, or place where a person stopped temporarily when visiting a city or country, on matters of business, or socially, should be considered his usual place of abode when his visit or stay had ended, and he absent, so as to make the posting of a summons on the front door thereof legal notice.

*Taylor,* 96 W.Va. at 247, 122 S.E. at 531. The *Taylor* Court then considered more than ten similar cases from other jurisdictions and concluded that "the defendant's usual place of abode was not in Huntington, Cabell county, but at Omar, Logan county, and that the

court erred in holding to the contrary." 96 W.Va. at 248, 122 S.E. at 533. The *Taylor* Court held that "[i]f the court did not obtain jurisdiction by process duly served upon the defendant, then it could not proceed to trial of the main issue." 96 W.Va. at 247, 122 S.E. at 531.

Similar to the situations in *Myers* and *Taylor*, there is neither evidence in the record herein, nor even an assertion that Mr. Dailey was served at his "dwelling place or usual place of abode" by Ms. Beane. As previously discussed, the only information in the record before this Court is Mr. Dailey's assertion that he did not reside in West Virginia at the time of the attempted service by Ms. Beane, and that his mother's home was not his "dwelling place or usual place of abode." Further, the return of service did not indicate that Mr. Dailey's mother's residence was his "usual place of abode." This assertion by Mr. Dailey is uncontroverted by the record and is not refuted by Ms. Beane, and, therefore, the circuit court's entry of default judgment was an abuse of discretion as it was based solely upon an insufficient return of service and an affidavit by Ms. Beane's counsel that such service was "personally served" upon Mr. Dailey's mother. Mr. Dailey's mother was not a party to this case and evidence that service was left at her home, in and of itself, is insufficient to effectuate proper service of process.

With regard to the final requirement of Rule 4(d)(1)(B) that the attempted substitute service upon Mr. Dailey's mother be perfected "by advising such person of the purport of the summons and complaint," the return of service simply states that a summons was left at Mr. Dailey's mother's home. Long ago, in *State v. Sears*, 111 W.Va. 42, 160 S.E. 297 (1931), this Court explained:

"In order that substituted service of original process shall have the effect of actual service upon the party in person, the return must show that all essential provisions of the statute authorizing such substituted service have been strictly complied with." *Jones v. Crim*, 66 W.Va. 301, 66 S.E. 367; *Staunton Perpetual B. & L. Co. v. Haden*, 92 Va. 201, 206, 23 S.E. 285 [ (1895) ]; *Midkiff v. Lusher*, 27 W.Va. 439

[ (1886) ]; *King v. Davis* (C.C.Va.) 137 F. 198, 206 [ (1903) ]. The return of service by leaving a copy of the notice or process should show that information was given by the officer to the person with whom it was left, of the purport of such notice or process. *Vandiver v. Roberts*, 4 W.Va. 493 [ (1871) ]; *Midkiff v. Lusher*, cited; *Douglass v. Kanawha, etc., R. Co.*, 44 W.Va. 267, 28 S.E. 705 [ (1897) ]; *Capehart v. Cunningham*, 12 W.Va. 750. "Service of a summons on a defendant by delivering a copy thereof to his wife is not sufficient where the officer's return fails to show that he gave her information of its purport, and a judgment by default on such service is void." *Park Land, etc., Co. v. Lane*, 106 Va. 304, 55 S.E. 690 [ (1906) ].

Moreover, in *Lemley v. Eakin*, 102 W.Va. 317, 135 S.E. 178 (1926), this Court explained that "[i]t is likewise elementary law that notice and an opportunity to be heard are essential to the jurisdiction of all courts, and such notice must be given by the issuance and service of process in the manner prescribed by law, unless waived. *Barrett v. McAllister*, 33 W.Va. 738, 11 S.E. 220 [1890]; *Taylor v. Cox*, 32 W.Va. 148, 9 S.E. 70 [1889]; *Haymond v. Camden*, 22 W.Va. 180 [1883]; *Capehart v. Cunningham*, 12 W.Va. 750 [1878]." *See* Syllabus Point 2, *Teachout v. Larry Sherman's Bakery, Inc.*, 158 W.Va. 1020, 216 S.E.2d 889 (1975) ("A defendant's objection to the court's jurisdiction over him may be expressed by motion or answer, as provided by Rule 12(b) R.C.P. and, if such jurisdictional objection is so made, the character of any further appearances at the trial, whether special or general, is immaterial and such appearance does not constitute a waiver of such objection"). In the present case, this Court's review of the record does not reveal any appearance by Mr. Dailey which could be construed to waive his objection to the circuit court's lack of personal jurisdiction over him.

 In the case at hand, the record does not support a conclusion that Mr. Dailey was properly served notice of the summons and complaint against him in the manner prescribed by law and this Court has consistently held that default judgments entered upon defective service of process are void.

*See* Syllabus Point 4, *Jones v. Crim,* 66 W.Va. 301, 66 S.E. 367 (1909) ("A default decree rendered upon a defective substituted service of process is void for want of jurisdiction."). Moreover, as previously stated, " ' "[a] void judgment, being a nullity, may be attacked, collaterally or directly, at any time and in any court whenever any claim or right is asserted under such judgment." Syl. pt. 3, *State ex rel. Vance v. Arthur,* 142 W.Va. 737, 98 S.E.2d 418 (1957).' Syl. Pt. 3, *State ex rel. Lemley v. Roberts,* 164 W.Va. 457, 260 S.E.2d 850 (1979), *overruled on other grounds by Stalnaker v. Roberts,* 168 W.Va. 593, 287 S.E.2d 166 (1981)." Syllabus Point 5, *State ex rel. Farber v. Mazzone,* 213 W.Va. 661, 584 S.E.2d 517 (2003). *See also State ex rel. Cecil v. Knapp,* 143 W.Va. 896, 105 S.E.2d 569 (1958); *State ex rel. Leeber and Covey v. The Board of Education of The County of Raleigh,* 143 W.Va. 584, 103 S.E.2d 797 (1958); *State of West Virginia ex rel. Browning v. Tucker,* 142 W.Va. 830, 98 S.E.2d 740 (1957); *State ex rel. Lovejoy v. Skeen,* 138 W.Va. 901, 78 S.E.2d 456 (1953), certiorari denied, 349 U.S. 940, 75 S.Ct. 786, 99 L.Ed. 1268 (1955); *Stephenson v. Ashburn,* 137 W.Va. 141, 70 S.E.2d 585 (1952); *Evans v. Hale,* 131 W.Va. 808, 50 S.E.2d 682 (1948); *Pettry v. Hedrick,* 124 W.Va. 113, 19 S.E.2d 583 (1942); *Perkins v. Hall,* 123 W.Va. 707, 17 S.E.2d 795 (1941); *Hayhurst v. J. Kenny Transfer Company,* 110 W.Va. 395, 158 S.E. 506 (1931); *New Eagle Gas Coal Company v. Burgess,* 90 W.Va. 541, 111 S.E. 508 (1922); *Roberts v. Hickory Camp Coal and Coke Company,* 58 W.Va. 276, 52 S.E. 182 (1905); *St. Lawrence Boom and Manufacturing Company v. Holt,* 51 W.Va. 352, 41 S.E. 351 (1902); *Hoback v. Miller,* 44 W.Va. 635, 29 S.E. 1014 (1898); *Fowler v. Lewis' Adm'r,* 36 W.Va. 112, 14 S.E. 447 (1892); *Haymond v. Camden,* 22 W.Va. 180 (1883); *Camden v. Haymond,* 9 W.Va. 680 (1876).

■ Having determined that the service of process was defective and therefore void, it necessarily follows that the circuit court did not thereby obtain jurisdiction over Mr. Dailey as proper service of process is necessary to confer jurisdiction upon a circuit court. This Court has held that " '[t]o enable a court to hear and determine an action, suit or other proceeding it must have jurisdiction of the subject matter and jurisdiction of the parties; both are necessary and the absence of either is fatal to its jurisdiction.' Syl. Pt. 3, *State ex rel. Smith v. Bosworth,* 145 W.Va. 753, 117 S.E.2d 610 (1960)." Syllabus Point 1, *Leslie Equipment Co. v. Wood Resources Co., L.L.C.,* 224 W.Va. 530, 687 S.E.2d 109 (2009). Accordingly, after thoroughly reviewing the record, it is clear that the circuit court abused its discretion in entering its July 22, 2003, entry of default against Mr. Dailey, and in its subsequent award of damages in its January 8, 2008, default judgment order. Thus, we reverse the circuit court and hold that its July 22, 2003, entry of default, and its January 8, 2008, default judgment orders be set aside.

## IV.

### CONCLUSION

For the reasons set forth above, the July 22, 2003, entry of default against the appellant, and January 8, 2008, default judgment order of the Circuit Court of Kanawha County are reversed, and this case is remanded to the circuit court with directions to enter an order setting aside both orders.

Reversed and Remanded with Directions.