727 S.E.2d 836

Kerry SAVARD, as Personal Representative of the Estate of Vicki Savard, Plaintiff Below, Petitioner

v.

CHEAT RIVER OUTFITTERS, INC., Brent Matthew Everson, Travis Cobb, Simon Buckland and Paul Hart, Defendants Below, Respondents.

No. 11–0430.

Supreme Court of Appeals of West Virginia.

Submitted May 23, 2012.

Decided June 6, 2012.

Stephen G. Skinner, Esq., Charles Town, WV, for Petitioner.

George N. Stewart, Esq., Dara A. DeCourcy, Esq., Zimmer Kunz, PLLC, Greensburg, PA, for Defendants.

PER CURIAM:

The Petitioner, Kerry Savard, appeals the February 8, 2011, order of the Circuit Court of Jefferson County which dismissed her civil action for lack of personal jurisdiction and lack of venue. For the reasons set forth in this Opinion, the order of the circuit court is reversed.

## I. Background

On May 17, 2008, Vicki Savard drowned in a whitewater rafting accident. The accident occurred in the Cheat River Canyon, Preston County, West Virginia. The Petitioner, a resident of New York, was appointed personal representative of Ms. Savard's estate, and filed a wrongful death complaint in the Circuit Court of Jefferson County, West Virginia. Named as defendants were the rafting company, Cheat River Outfitters, Inc., ("CRO"), its president, Paul Hart, and three river guides assigned to Ms. Savard's rafting group: Brent Matthew Everson, Travis Cobb ("Mr. Cobb"), and Simon Buckland. The complaint alleged two grounds for personal jurisdiction and venue in Jefferson County:

> Venue is proper in Jefferson County because, Defendant CRO is doing business in Jefferson County as a result of its license for whitewater rafting on the Shenandoah River and because Defendant Travis Cobb is a resident of Jefferson County.

On March 24, 2010, a process server went to the Jefferson County address where Mr. Cobb was believed to reside. At the residence a man who identified himself as Mr. Cobb's father explained that his son was out-of-state on a trip. The process server then gave the summons and complaint to the elder Cobb, who stated that he would give it to the lawyers handling his son's case. A Return for "Substituted Personal Service" was later filed, which states that the summons and complaint had been left at Mr. Cobb's "usual place of abode."

The defendants subsequently filed a joint motion to dismiss the complaint for insufficiency of service of process, and for lack of venue. In support of the motion, Mr. Cobb submitted a sworn affidavit attesting that he lived on his sailboat which was docked in a marina located in the Town of East Greenwich, Rhode Island. Mr. Cobb explained that the Jefferson County address was his parents' home, and that in the several month period preceding the date of the process server's attempted service he had visited and stayed at his parents' house less than one week in total time. Mr. Cobb swore that he was not staying as a visitor at his parents' house when the process server delivered the summons and complaint to his father. Mr. Cobb filed numerous records suggesting his residency was in East Greenwich, Rhode Island, and not Jefferson County, West Virginia.

The circuit court granted the defendants' motion to dismiss, finding that Mr. Cobb was not a resident of Jefferson County and, therefore, that the attempted substituted service was not proper. Because Mr. Cobb had not been properly served with the summons and complaint, the court concluded that it did not have personal jurisdiction to hear the

civil action as it related to Mr. Cobb. The circuit court further found that it did not have venue to hear the case because the accident did not occur in Jefferson County, no other named defendant resided in Jefferson County, and CRO's principal offices or officers did not reside in Jefferson County.

The Petitioner now appeals, arguing that Mr. Cobb lives a "transient" and "nomadic" lifestyle, working seasonally in West Virginia (whitewater rafting) and Colorado (ski resorts), and sailing his boat along the East Coast when not working at those jobs. As a consequence of this lifestyle, the Petitioner argues that the best evidence of Mr. Cobb's residency is not Mr. Cobb's self-serving affidavit relied upon by the circuit court. Instead, the best evidence is obtained from Mr. Cobb's earlier, official, declarations as to his residency, *i.e.*, declarations made by Mr. Cobb when it was not in his self-interest to claim that his residency was on a sailboat. The Petitioner points to numerous exhibits in the record, including several applications completed by Mr. Cobb and filed with the West Virginia Department of Motor Vehicles ("DMV"). On the DMV applications, which encompass periods both before and after service of the summons and complaint, Mr. Cobb lists his parents' Jefferson County address as being his own place of residence.

## II. Standard of Review

■ In Syllabus Point 2 of *State ex rel. McGraw v. Scott Runyan Pontiac—Buick, Inc.*, 194 W.Va. 770, 461 S.E.2d 516 (1995), we held that "[a]ppellate review of a circuit court's order granting a motion to dismiss a complaint is *de novo.*"

## III. Discussion

There are two issues presented by this appeal: first, whether substituted service of the summons and complaint was defective; and, second, whether the Circuit Court of Jefferson County had venue to hear the action.

**1.** We note that the 1860 statute discussed in *Capehart* contained a process for substituted service almost identical to the process now required

### A. Substituted Service

■ Subject to certain restrictions, Rule 4(d)(1)(B) [2007] of the *West Virginia Rules of Civil Procedure* permits substituted service of a civil summons and complaint:

(1) Individuals.—Service upon an individual other than an infant, incompetent person, or convict may be made by:

(B) Delivering a copy of the summons and complaint at the individual's *dwelling place or usual place of abode* to a member of the individual's family who is above the age of sixteen (16) years and by advising such person of the purport of the summons and complaint[.] (Emphasis added.).

The issue in contention is whether, at the time of substituted service, Mr. Cobb's "dwelling place or usual place of abode" was his parents' house located in Jefferson County, West Virginia, or whether it was on his sailboat then located in East Greenwich, Rhode Island.

It has been the law of this State for more than a century that the phrase "usual place of abode" is understood to mean "the usual place of abode *eo instanti* the summons is served." Syllabus Point 5, *Capehart, Adm'r v. Cunningham, Adm'r*, 12 W.Va. 750 (1878).[1] In *Capehart* we posited the question, "What does the statute mean by the expression '*his usual place of abode*'?" In answering this question we observed that

[w]hen we consider that the object of the statute was, to enable the defendant to know, or have notice of the action against him, that he might protect his rights therein, it is clear the statute meant his usual place of abode *eo instanti*, that the summons was posted, not a place of casual abode, but one of present abiding. It would be absurd to hold, that a boarding house, or place where a person stopped temporarily when visiting a city or country on matters of business or socially, should be considered his usual place of abode when his visit or stay had ended and he absent, so as to make the posting of a summons on the front door thereof legal notice.

under Rule 4(d)(1)(B) of the *West Virginia Rules of Civil Procedure*.

*Capehart,* 12 W.Va. at 757. *See also* Syllabus Point 2, *Williamson v. Taylor,* 96 W.Va. 246, 122 S.E. 530 (1924) ("Under the statute 'the usual place of abode' means the customary place of abode at the very moment the writ is left posted; hence, where the writ is left posted at a former place of abode, but from which defendant had in good faith removed and taken up his place of abode elsewhere, service so had is ineffective and invalid."); *Beane v. Dailey,* 226 W.Va. 445, 450–451, 701 S.E.2d 848, 853–854 (2010) (where we applied *Capehart* and *Taylor* ).

The record contains six DMV applications completed by Mr. Cobb. These applications are dated July 11, 2001 (Level 2 Skills Test), April 15, 2003 (Level 2 Skills Tests and Duplicate License), August 7, 2003 (Renewal), August 8, 2006 (Renewal), September 9, 2009 (Duplicate License), and October 1, 2010 (Renewal). Each of these applications required Mr. Cobb to provide certain information, including (1) his residential address, (2) his mailing address, (3) and whether his address had changed since his license was last issued. The last three applications notified Mr. Cobb, under the heading "Applicant's Identity, Address, and Physical Description," that he must notify DMV within 20 days if his address changed from that stated in his application. Each application required Mr. Cobb to sign the application and "certify under penalty of false swearing" that all the information he provided on the applications was true. Reviewing these applications, we note that Mr. Cobb listed his parents' Jefferson County address as being his own *residential address* until after his residency became an issue.

The substituted service on Mr. Cobb was made on March 24, 2010, by delivering a copy of the summons and complaint to the Jefferson County address listed on his DMV applications. Six months before this service, Mr. Cobb completed the September 9, 2009, DMV application, listing his parents' address as being his own residential address. Six months after this service—and after Mr. Cobb's residency became an issue in this case—Mr. Cobb completed the October 1, 2010, DMV application. This application left blank his residential address, but stated that there had been no change in his address since his last application.

We conclude that Mr. Cobb's usual place of abode, when the summons and complaint were served, was the Jefferson County address listed on his DMV applications, that service of process was perfected as to him, and that the circuit court of Jefferson County had personal jurisdiction to proceed with the action.[2]

### B. Venue

■ The circuit court ruled that because Mr. Cobb was the only defendant alleged to reside in Jefferson County, it did not have venue to hear the action. Venue for civil actions is governed by *W.Va.Code,* § 56–1–1 [2007], which provides, in pertinent part, that:

(a) Any civil action or other proceeding, except where it is otherwise specially provided, may hereafter be brought in the circuit court of any county:

(1) Wherein any of the defendants may reside . . .;

As we have found, *supra,* Mr. Cobb was a resident of Jefferson County at least from the date of his 2009 DMV application through the date of his October 1, 2010 application. The Petitioner filed her complaint on March 22, 2010, and perfected service in Mr. Cobb on March 24, 2010. Accordingly, we find that the Circuit Court of Jefferson County has venue under *W.Va.Code,* § 56–1–1(a)(1), to hear the Petitioner's wrongful death complaint.

2. We limit our findings to the facts of this particular case. We understand that people move after having obtained a driver's license, and that a common oversight may be that a person will forget to notify DMV of a new address. For this reason, delivering a copy of a summons and complaint to the residential address listed in DMV records may, in other cases, be found insufficient for purposes of obtaining jurisdiction to hear an action. Under the facts of this particular appeal, Mr. Cobb's DMV records show that he declared, under criminal and civil penalty, that his residential address was in Jefferson County before and after the date of substituted service. Mr. Cobb even declared in the 2010 application (after service) that there *had been no change in his address* from that provided in the 2009 application (before service). It is more the consequence of the 2010 application that we today make our findings.

## IV. Conclusion

For the reasons set forth in this Opinion, the circuit court's order dismissing the Petitioner's complaint is reversed, and this matter remanded for further proceedings consistent with this Opinion.

Reversed and Remanded.